Jimmy MATTHEWS, Appellant,

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 1998-SC-0526-MR.

Supreme Court of Kentucky.

Feb. 22, 2001.

Rehearing Denied May 24, 2001.

Richard Hoffman, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

A.B. Chandler III, Attorney General, Todd D. Ferguson, Assistant Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

GRAVES, Justice.

Appellant, Jimmy Matthews, was convicted in the Jefferson Circuit Court of several drunk-driving related offenses. The jury convicted him of one count of first-degree assault, two counts of first-degree criminal mischief, two counts of first-degree wanton endangerment, DUI fourth offense, driving on a suspended license, and of being a persistent felony offender in the first degree. He was sentenced to 50 years in prison and he now appeals as a matter of right.

On June 26, 1996, at approximately 11:00 p.m., Appellant was traveling southbound on northbound Interstate 65 in Louisville. After weaving across several lanes, Appellant's vehicle struck the pickup truck of Sharon Glover, which was traveling northbound. Appellant's vehicle next struck the vehicle of Charles Hatchell head-on, then flipped upside-down and pinned Appellant inside the vehicle. A fourth vehicle, a yellow Mustang, was hit by debris from Glover's wrecked truck.

Glover suffered an injury to her neck and required three weeks of physical therapy. Hatchell's injuries were more severe. His foot was nearly detached, and he was hospitalized for ten (10) days. Appellant was extricated from his vehicle with the help of the jaws of life, and was transported to a nearby hospital. Officer Steve Johnson noticed the strong smell of alcohol on Appellant when he was in the ambulance. The rescue workers as well had noted signs of intoxication when they extricated him from his overturned vehicle. Both Officer Johnson and Officer Tom Gilsdorf observed Appellant at the hospital and noted that he was combative and incoherent, had slurred speech, and smelled strongly of alcohol.

At the hospital, Tom Gilsdorf, a veteran police officer, observed a woman, believed to be a registered nurse, follow all the procedures required by state law in taking a blood sample from Appellant. A state crime laboratory test later showed this blood sample contained .25 grams of ethyl alcohol per 100 milliliters of blood, two and one half times the legal limit for intoxication. Appellant's license was suspended at the time of the wreck.

The Commonwealth commented on the result in its opening argument, but did not return to the issue of the blood test until it called Officer Gilsdorf to testify. Because he noted signs of intoxication, Officer Gilsdorf stated that he asked for a blood kit and watched as two vials of blood were drawn from Appellant. Further, testifying that he knew the prescribed procedures for drawing blood for alcohol analysis, he stated that the nurse, whose name he remembered only as Susan, prepared Appellant's arm with betadine, a non-alcoholic solution. While he didn't remember the nurse's last name at trial, he noted it, as well as the date and time, on the blood kit at the time the sample was drawn.

The Commonwealth was unable to locate Susan, and the only other witness to testify about the blood analysis was Terry Comstock, a chemist who analyzed the blood sample at Kentucky State Police Laboratory. Responding to the Commonwealth attorney's question, Comstock testified that the sample read .25 grams of ethyl alcohol per 100 milliliters of blood. In response to a second question, he identified the report his office had produced. Only when the Commonwealth moved to introduce the report into evidence did Appellant object to the Commonwealth's lack of a proper foundation for the reading, namely the credentials of the nurse who

drew the blood. KRS 189A.103(6) authorizes blood to be drawn by a physician, registered nurse, phlebotomist, medical technician or medical technologist. The trial court took great pains to assure itself that the blood alcohol tests were conducted properly and that the results were admissible. After concluding that the procedures followed were sufficient to ensure substantial compliance with the law and that the sample wasn't contaminated, the trial court overruled Appellant's objection.

It is more reasonable to interpret the purposes of the statute and regulations concerning the credentials of the individual drawing the blood as giving a presumption of regularity. It is presumed that those individuals mentioned in the statute and regulations will perform the procedures properly; however, they are not the only persons in the world who can draw blood accurately. Here, the proper procedures were followed. Moreover, to reject this evidence in the absence of any indication whatsoever of contamination or inaccuracy would place form over substance.

In his reply brief, Appellant admits that "it is arguably true that trial counsel waited two questions too late to object to the introduction of the blood alcohol content." Appellant's explanation for this lapse in timeliness, once again from his reply brief, is that "the Commonwealth *duped* defense counsel into believing that it could produce appropriate witnesses and lay a proper foundation for trial testimony. Defense counsel clearly was *conned into believing this* since the foundation that was established came during the cross examination of Officer Gilsdorf, a witness for the Commonwealth." (Emphasis added.) While a proper foundation may not have been laid, and the Commonwealth may have been remiss in failing to prove that a registered nurse drew the blood, the rec-

ord contains sufficient admissible evidence to sustain the conviction.

Even if the evidence was erroneously admitted, it was harmless error. There is no reason to believe that the jury would have found differently, given the other evidence of Appellant's impairment due to alcohol that was introduced. One of the victims testified that Appellant was traveling at a high rate of speed, the wrong way on an interstate at night. Appellant stopped weaving only when he began colliding with other vehicles, even though potential and actual victims were trying to signal him to stop by flashing their lights and beeping their horns. Officers on the scene described Appellant as reeking of alcohol, combative, incoherent, and slurring in his speech. In the knowledgeable opinion of Officer Gilsdorf, Appellant was intoxicated. As stated in *Abernathy v. Commonwealth*, Ky., 439 S.W.2d 949, 953 (1969), "What it really boils down to is that if upon consideration of the whole case this court does not believe there is a substantial possibility that the result would have been any different, the irregularity will be held non-prejudicial."

Regarding Appellant's second claim of error, he argues, and we agree, that there was insufficient evidence to convict him of first-degree wanton endangerment of Lucinda Riden. The Commonwealth presented evidence, through the testimony of Officer Johnson, that the automobile collision caused debris from Sharon Glover's truck to land on a yellow Mustang which was located near the accident scene. Based on this evidence, the jury convicted Appellant of wantonly endangering Lucinda Riden. The problem is, neither Officer Johnson, nor any other witness, ever mentioned Riden's name or connected her to the yellow Mustang. Indeed, no one ever testified that the Mustang was even occupied at the time it was hit by debris.

Clearly there was insufficient evidence to sustain a conviction of wanton endangerment as to Riden.

■ Appellant next claims his convictions for fourth-degree assault and first-degree wanton endangerment against Sharon Glover constitute a violation of double jeopardy principles, because wanton endangerment is a lesser-included offense of misdemeanor assault. Appellant is mistaken. KRS 508.030 (Fourth–Degree Assault) states:

(1) A person is guilty of assault in the fourth degree when:

(a) He intentionally or wantonly causes physical injury to another person; or

(b) With recklessness he causes physical injury to another person by means of a deadly weapon or a dangerous instrument.

KRS 508.060 (Wanton Endangerment) states:

A person is guilty of wanton endangerment in the first degree when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person.

These offenses each require proof of an element which the other does not. *See Commonwealth v. Burge*, Ky., 947 S.W.2d 805, 811 (1996). Assault in the fourth degree requires a finding of physical injury, whereas wanton endangerment does not. Wanton endangerment requires conduct which creates a substantial danger of death or serious physical injury to another, whereas fourth-degree assault does not. Thus, Appellant's argument is without merit.

Appellant's final argument regarding the trial judge's supposed abdication of his duty to exercise discretion in imposing sentence is without merit.

For the reasons set forth above, Appellant's conviction is affirmed in part, and reversed in part.

LAMBERT, C.J., COOPER, GRAVES, KELLER, JOHNSTONE and WINTERSHEIMER, J.J., concur.

STUMBO, J., dissents in a separate opinion.

STUMBO, Justice, dissenting.

Respectfully, I must dissent from that portion of the majority opinion which holds that a sufficient foundation was laid to permit admission of the blood alcohol test results into evidence. The testimony in regard to the drawing of the blood sample was as follows. Appellant was transported to the hospital by the police. After noticing signs of intoxication, Officer Gilsdorf testified that he requested samples of blood be taken from Appellant. Appellant's arm was swabbed with betadine, a non-alcoholic solution prior to the blood being drawn. Two vials of blood were drawn by a woman Officer Gilsdorf believed to be a registered nurse named Susan. He did not remember Susan's last name, though he had noted it upon the blood kit along with the date and time the sample was drawn. The only other witness to testify in regard to the blood sample was the chemist from the Kentucky State Police Laboratory, Terry Comstock. Comstock testified as to the results of the testing and introduced his report.

Relevant portions of KRS 189A.103 provide as follows. Section (3)(a) "mandates that tests of the person's breath, blood, or urine, to be valid pursuant to this section, shall have been performed according to the administrative regulations promulgated by the secretary of the Justice Cabinet

or his designee." Section (6) provides that "only a physician, registered nurse, phlebotomist, medical technician, or medical technologist not otherwise prohibited by law can withdraw any blood of any person submitting to a test under this section."

500 KAR 8:030 Section 2(2) provides that, "the blood sample shall be collected by a person authorized to do so by KRS 189A.103(6)."

The question to be decided here is whether the failure to enter proof that the blood sample upon which the Commonwealth relies was properly drawn renders the results of testing on that blood inadmissible. In *Speers v. Commonwealth,* Ky., 828 S.W.2d 638 (1992), we discussed at length the required qualifications of one who can draw blood from a DUI suspect. *Id.* at 640. On a related topic, in *Commonwealth v. Wirth,* Ky., 936 S.W.2d 78 (1996), we discussed the foundation requirements for a breathalyzer test result. Therein we noted that the qualifications of a breathalyzer technician may be shown "by means of business or public records showing compliance with the ... requirements. Provided the documentary evidence may be properly admitted, it is unnecessary to produce the testimony of the technician who serviced and calibrated the machine." *Id.* at 82. The objection made by Appellant was valid and the trial court should have excluded the results of the blood alcohol test.

While the Commonwealth has argued that the error, if any, was harmless given other evidence of Appellant's intoxication, in my view it was also possible that Appellant's evidence supported his theory that his car struck something on the roadway, spun out of control, and reversed its direction. It could also be possible that his slurred speech and combative behavior were the result of injuries he· sustained in the accident. Thus, I would conclude that while there was other evidence of intoxication, I cannot find in good conscience that the evidence against him was so overwhelming as to conclude that his substantial rights were unaffected by the erroneous admission of the blood test results. I would reverse and remand for a new trial.