Larry RAMSEY, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2002–SC–0842–MR.

Supreme Court of Kentucky.

Jan. 20, 2005.

appeals as a matter of right, arguing that (1) the evidence was insufficient to support the conviction of first-degree wanton endangerment; and (2) the trial court erred in admitting evidence of "prior bad acts." We affirm Appellant's convictions in full.

### FACTS

We begin with a brief description of the events that led to Appellant's convictions. On the evening of January 15, 2001, Appellant was embroiled in a heated argument with his girlfriend, Tammy Sullivan. He eventually left in his pickup truck with their ten-year-old son, Larry Lee Sullivan, as a passenger. Ms. Sullivan went to a nearby store to call the police. She told the police that Appellant had been drinking that day and was out driving with their son. Sergeant Cross of the Pulaski County Sheriff's Department responded to the call and began searching for Appellant's truck. At a four-way intersection, he observed a pickup truck that matched Ms. Sullivan's description. The vehicle stopped at the stop sign and then suddenly took off at a high rate of speed. As Sergeant Cross attempted to catch up with it, the truck slowed down, turned its headlights off and eventually stopped on the side of the road near a fence. Both Appellant and his son were in the truck.

After being pulled over, Appellant explained that he had been arguing with Ms. Sullivan and that he "was trying to get away from her for a while." When asked whether he had been drinking, Appellant indicated that he had drunk some beer earlier in the day. Some beer cans were found on the floor of the vehicle.[1] Sergeant Cross also testified that Appellant appeared drunk, smelled of alcohol, had bloodshot eyes and his speech was slurred. Appellant was placed under arrest.

John Palombi, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Connie Vance Malone, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Perry T. Ryan, Assistant Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

### OPINION OF THE COURT

A Pulaski Circuit Court jury convicted Larry Ramsey of first-degree wanton endangerment, DUI (4th offense), and driving with a suspended license (3rd offense). He was also found guilty of being a first-degree persistent felony offender. He was sentenced to ten years' imprisonment on each of the counts, with two of the sentences to run consecutively, for a total of twenty years' imprisonment. He therefore

---

1. Sergeant Cross testified at trial that he saw an open can of beer at Appellant's feet and there was a partial 12–pack of beer at his feet as well.

## ANALYSIS

### I. First–Degree Wanton Endangerment

■ Appellant first claims that he was entitled to a directed verdict as to the wanton endangerment charge, alleging that the evidence was insufficient to support the jury's verdict. This issue is preserved by his trial counsel's motion for a directed verdict at the close of the Commonwealth's case in chief and again at the end of the defense case. In *Commonwealth v. Benham*, Ky., 816 S.W.2d 186, 187 (1991), this Court states the rule as follows:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

■ On appellate review of the denial of a directed verdict, the test is whether, "under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Sawhill*, Ky., 660 S.W.2d 3, 4–5 (1983) (quoting *Trowel v. Commonwealth*, Ky., 550 S.W.2d 530 (1977)).

This appeal requires us to examine whether the jury, based on the evidence presented in the case, could reasonably believe beyond a reasonable doubt that Appellant is guilty of first-degree wanton endangerment, as defined by KRS § 508.060. "A person is guilty of wanton endangerment in the first degree when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person." KRS 508.060(1). After carefully examining the evidence in this case, we find ample evidence to support the jury verdict.

### A. Wanton Conduct

A person acts wantonly "when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists." KRS 501.020(3). And a person who creates such a substantial and unjustifiable risk but "is unaware thereof solely by reason of voluntary intoxication also acts wantonly with respect thereto." *Id.*

As discussed hereafter, drunk driving with a ten-year-old child as a passenger, under the particular circumstances in the present case, creates a substantial and unjustifiable risk to that child. Thus, in so doing, Appellant's behavior falls within the meaning of wanton conduct as framed in the statute.

### B. Substantial and Unjustifiable Danger

"Drunk driving is a reckless act that often results in injury, and the risks of driving while intoxicated are well-known." *United States v. Rutherford*, 54 F.3d 370, 376 (7th Cir.1995). In 2002, alcohol-related crashes accounted for 17,419 traffic fatalities on our nation's highways, an average of one alcohol-related fatality every 30 minutes. U.S. Department of Transportation, National Highway Traffic Safety Administration, *Traffic Safety Facts 2002*, http://www-nrd.nhtsa.dot.gov /pdf/nrd–30/NCSA/TSF2002/2002alcfacts.pdf. Additionally, in 2002, "one alcohol-related injury [occurred] approximately every two minutes." *Id.* In Kentucky, thirty-three (33%) percent of the 915 traffic fatalities in

2002 involved alcohol. *Id.* at 8, table 6. It should also be noted that an estimated 35% of all convicted jail inmates reported that they had used alcohol at the time of the offense in 2002. U.S. Department of Justice, *Profile of Jail Inmates, 2002,* http://www.ojp.us-doj.gov/bjs/pub/pdf/pji02.pdf (2002).

In this case, Appellant substantially endangered his son by driving under the influence. Alcohol apparently and adversely impacted his ability to operate the vehicle. He was driving in an irregular and unreasonable manner: he suddenly started the truck at a higher than normal speed; he even turned off the headlights before pulling it over. The risk of endangering his ten-year-old son is far more than speculative or minimal. Thus, considering the totality of the evidence and the surrounding circumstances of this case, we safely conclude that Appellant's ongoing intoxication created a situation which put his minor child at substantial risk of suffering serious physical harm or death.

C. *Extreme Indifference to Human Life*

The key issue in the present case, as conceded by Appellant, is whether Appellant's wanton conduct manifests "extreme indifference to human life." This is a question to be decided by the trier of fact. *Brown v. Commonwealth,* Ky., 975 S.W.2d 922, 924 (1998). If the jury determines that, under the given circumstances, a defendant's conduct rises to the level of aggravated wantonness, then the jury could find "extreme indifference to human life" as required by the statute. *Id.* at 925.

Appellant contends that his one careless act—taking control of a vehicle while intoxicated—was not manifestly extremely dangerous compared to the acts of reckless driving that would typically lead to convictions of wanton endangerment. In other words, he asserts that first-degree wanton endangerment cannot be proved solely by the fact of drunk driving, absent of evidence indicating much more dangerous physical driving. This argument must fail because: (1) by so arguing, Appellant turned a blind eye to his other dangerous driving behavior, as we will discuss shortly hereinafter; (2) this Court, in *Walden*[2] and *Estep,*[3] clearly stated that intoxication alone either sufficed to establish aggravated wantonness or it was the circumstance that raised the defendant's conduct to the level of aggravated wantonness; and (3) in ruling on a motion for directed verdict, the test is not how Appellant's behavior compares with previous defendants, but whether a jury could reasonably conclude, viewing the evidence in the light most favorable to the State, that Appellant was driving so wantonly as to manifest extreme indifference to human life.

Appellant relies heavily on *Matthews v. Commonwealth,* Ky., 44 S.W.3d 361 (2001), arguing that, a conviction for aggravated vehicular wanton endangerment must involve behavior which is more egregious than that of Appellant, such as driving at a high-speed or on the wrong side of a road. He concludes that drunk driving alone is not sufficient to warrant a conviction of wanton endangerment. This reliance is misplaced. In *Matthews, supra,* the defendant was driving down the interstate at

---

**2.** *Walden v. Commonwealth,* Ky., 805 S.W.2d 102, 105 (1991) (holding that the extreme nature of the intoxication was sufficient evidence from which a jury could infer wantonness so extreme as to manifest extreme indifference to human life), (*overruled on other* grounds by *Commonwealth v. Burge,* Ky., 947 S.W.2d 805 (1996)).

**3.** *Estep v. Commonwealth,* Ky., 957 S.W.2d 191, 192 (1997) ("Depending on the situation, drunk driving may be ... a circumstance [manifesting indifference to human life].").

a high rate of speed on the wrong side of the road, and an accident followed. The defendant was charged with wantonly endangering the driver of a car that was located near the accident scene and was hit by the debris resulting from the accident. We reversed his conviction of wanton endangerment, reasoning that it was not supported by sufficient evidence. We could find no evidence that the driver of the car was endangered by the defendant's wanton conduct because there was no testimony to establish that the car was occupied at the time it was hit by the debris and because the individual alleged to be endangered was "never connected to the car or named in any witness' testimony." *Id.* at 364–365.

By contrast, in the case at bar, Appellant's wanton conduct endangered his 10–year–old son, who was sitting in the passenger seat of the vehicle that he was driving while intoxicated. Although admittedly, Appellant was not driving at a high rate of speed on the wrong side of the road, wanton behavior manifesting extreme indifference to human life is not limited to that type of conduct. Here, Appellant was not simply driving under the influence as he tried to argue. Actually, his physical acts of driving included more than one reported lapses: it was his third time of operating a motor vehicle despite a license suspension for DUI; he was driving while intoxicated; he suddenly accelerated the vehicle at a speed noticeably higher than the normal; and he turned off the vehicle's headlights while still on the road.

More importantly, he was driving, while in a drunken condition, with his minor child as a passenger. Unlike an adult who has the capability of deciding for himself whether to sit next to a drunken driver, a ten-year-old boy is powerless and has no control of himself when his drunken father wants to take him for a risky ride. We

cannot expect a child at the age of ten to perceive the dangerous nature of drunk driving.

Thus, the State was not relying merely on the effect of intoxication to establish the aggravated wantonness. As a matter of fact, our reading of the totality of circumstances in this particular case leads to the conclusion that Appellant was operating a vehicle in an improper manner far below the standard that a reasonable person would observe, thus manifesting extreme indifference to the grave risk of death or serious physical injury imposed on his ten-year-old son.

Finally, one thing worthy of noting is that this opinion should not be read as authorization of a wanton endangerment prosecution in every DUI violation. It is true that the immediate public is placed at risk whenever an intoxicated driver enters the roadways and the crime of DUI is always to be denounced, however, the offense of DUI is separate and distinct from the offense of wanton endangerment. The sole fact of intoxication is not enough to sustain a conviction of wanton endangerment. As stated above, however, the facts in this case are so egregious as to warrant conviction of wanton endangerment.

## II.  *Testimony of Prior Bad Acts*

■  As his second claim of error, Appellant contends that the trial court erroneously allowed evidence in when the State's witnesses testified about his prior bad acts absent any notice, as required by KRE 404(c). Specifically, Appellant cites six statements, which he argues should have been excluded as impermissible KRE 404(b) evidence.

■■  Because Appellant failed to object at trial to any of the six statements, he failed to preserve the issue for our review. RCr 9.22. Nevertheless, Appellant urges

us to review the alleged error under the palpable error rule pursuant to RCr 10.26 and KRE 103(e). "A palpable error is one which affects the substantial rights of a party and relief may be granted for palpable errors only upon a determination that a manifest injustice has resulted from the error". *Partin v. Commonwealth*, Ky., 918 S.W.2d 219, 224 (1996). To show manifest injustice, the reviewing court must find, upon a consideration of the whole case, a substantial possibility that the result would have been different but for the alleged error. *Id.* The parties have stipulated to the conclusive evidence of Appellant's suspended license; therefore, our concerns regarding this issue are Appellant's Wanton Endangerment charge as well as DUI charge. After consideration of the entire record we find that admission of these statements did not reach the level of palpable error as required for reversal.

The evidence of Appellant's intoxication at the time of his arrest is overwhelming. Appellant does not dispute that on the day in question he had drunk some beers. An open beer can and several additional beer cans were found on the floor of his truck at the time of his arrest. Ms. Sullivan also testified that Appellant was drunk when he left the house with their son. The officer on the scene described Appellant as reeking of alcohol and slurring in speech. When asked as to his destination, Appellant replied that he was heading to the bootlegger's. In the opinion of Sergeant Cross, Appellant was intoxicated. Moreover, his testimony describing Appellant's belligerent conduct after arrest[4] and use of abusive language at the detention center to which he was transported immediately

thereafter[5] was also evidence from which the jury could reasonably infer Appellant's state of intoxication.

Given the overwhelming nature of the evidence as to the issue of intoxication, it is clearly beyond a reasonable doubt that, without the statements, Appellant would have still been found intoxicated while driving. Even if we agreed with Appellant that these six statements constitute KRE 404(b) evidence, the admission of these statements does not rise to the level of "palpable error" and no manifest injustice occurred.

For the reasons set forth in this opinion, the convictions and sentences imposed by the Pulaski Circuit Court in this case are affirmed.

LAMBERT, C.J.; GRAVES, KELLER, and WINTERSHEIMER, JJ., concur.

JOHNSTONE, J., dissents by separate opinion in which COOPER and SCOTT, JJ., join.

JOHNSTONE, Justice, dissenting.

Because I believe that Appellant was entitled to a directed verdict as to the wanton endangerment charge, I must respectfully dissent.

As noted in the majority opinion, a person is guilty of wanton endangerment when he "engages in conduct which creates a substantial danger of death or serious physical injury to another person. KRS 508.060(1)." *Op.* at 196. However, it seems that the majority has wholly disregarded the term "substantial" as employed in the statute. "Substantial" is defined by

---

**4.** Sergeant Cross testified that he observed Appellant hitting or beating his head on the back window of the patrol car. He also described Appellant's belligerent behavior as "refusing to cooperate, continually cussing me, yelling."

**5.** Testimony shows that Appellant shouted at Sergeant Cross that "it would not take much for him to kick my a--."

*Webster's Dictionary* as "considerable in quantity" or "significantly large." In other words, the risk created by the defendant must be real, considerable and certain, not merely possible; the danger must be palpable, not simply theoretical in a set of circumstances that could potentially come to pass. While deplorable to say the least, Appellant's conduct in this case cannot be construed as creating the requisite "substantial" risk of death or serious physical injury; I find the connection between Appellant's actual conduct and the potential for death or injury to be far too tenuous.

The majority concedes that the sole fact of Appellant's intoxication is insufficient to support a charge of wanton endangerment, and relies in addition on the following behavior: the manner in which Appellant drove the vehicle and the fact that his minor child was in the vehicle.[1] At a stop light moments before he was pulled over, Appellant accelerated his truck at a higher than normal rate of speed. As he pulled his truck over to the shoulder upon request of the police officer, Appellant turned off his headlights. These sloppy driving habits, committed by thousands of drivers on a daily basis, simply do not create a substantial risk of death or injury, nor do they indicate the requisite extreme indifference to human life. The result might be different if Appellant had been speeding down an interstate on the wrong side of the road or engaging in a high-speed car chase—this type of behavior coupled with intoxication rises to the level of egregiousness contemplated by the wanton endangerment statute, not prematurely turning off one's headlights.

The majority also underscores the fact that Appellant's passenger was a minor as a circumstance that raises driving while intoxicated to wanton endangerment. I believe the child's age is entirely irrelevant to a determination of the sufficiency of the evidence in this case. The majority states that a child of ten cannot be expected "to perceive the dangerous nature of drunk driving." There is nothing in the wanton endangerment statute stating that the endangered person must perceive or be aware of the risk created. Nor do I believe that the child's age should be considered to render Appellant's conduct any more or less wanton. Would the Appellant here be less culpable if the child were sixteen years old, able to perceive the danger, though still a minor?

The majority opinion cautions that the holding herein should not be considered as "authorization of a wanton endangerment prosecution in every DUI violation." *Op.* at 198. I find this warning empty, as the facts of this case demonstrate that even the slightest driving infraction will raise a DUI violation to a wanton endangerment charge. The holding today, I believe, distorts the intent of the legislature in their definitions of DUI and wanton endangerment. I believe establishing penalties for criminal offenses is a legislative function.

COOPER and SCOTT, JJ., join this dissent.

---

1. The majority also cites as further evidence of Appellant's wanton behavior that this was his third DUI conviction. *Op.* at 198. I find this fact wholly irrelevant to a determination of whether his behavior on the night in question rises to the level of wanton endangerment. If the majority believes that Appellant's conduct is wanton, then the conduct would not be any less wanton if committed by a person with no criminal history.