# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: APRIL 30, 2020
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

DATE 5/28/20

2018-SC-000615-MR

JAMES M. SPAULDING                                                    APPELLANT

V.      ON APPEAL FROM JEFFERSON CIRCUIT COURT
        HONORABLE OLU ALFREDO STEVENS, JUDGE
                    NO. 16-CR-000358

COMMONWEALTH OF KENTUCKY                                              APPELLEE

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

James M. Spaulding was convicted of wanton murder, four counts of first-degree wanton endangerment, and first-degree fleeing or evading police. Pursuant to the jury's recommendation, the Jefferson Circuit Court sentenced him to thirty-three years' imprisonment. Spaulding now appeals as a matter of right,[1] raising three claims of error: (1) the trial court improperly instructed the jury on wanton murder, (2) Spaulding was prejudiced by the Commonwealth's *Moss* violation[2] and (3) the trial court improperly limited mitigating evidence of details of Spaulding's prior convictions during the sentencing phase of trial. After review of the record and applicable law, we affirm.

---

[1] Ky. Const. § 110(2)(b).

[2] *Moss v. Commonwealth*, 949 S.W.2d 579 (Ky. 1997).

## I. Factual and Procedural Background.

The night of February 2, 2016, Spaulding rode around Louisville with his friend Antoine Major in Major's F-150 truck. They stopped to get cigarettes and beer and eventually ended up at Major's mother's home, where Spaulding smoked spice,[3] marijuana, did methamphetamine and drank alcohol. Spaulding became paranoid and thought someone was out to kill him. The next morning, Spaulding smoked more spice and marijuana and perhaps did more meth; he could not recall. Later that evening, he bought more cigarettes and spice, and he and Major rode around in Major's truck into the early morning hours of February 4th. Due to his drug hallucinations, Spaulding became increasingly paranoid, thinking people were following them and out to get him. Believing Major was wired by the FBI, Spaulding made Majors strip and then threw his clothes out the window of the truck.

They stopped at a Denny's Restaurant and Spaulding went inside and asked for help and for someone to call the police. While inside Denny's, Spaulding picked up the phone and called 911 himself, reporting that he had been robbed. Convinced people were out to get him, he left before police arrived. Spaulding and Major then pulled into a Four Points by Sheraton Hotel parking lot. They went inside the lobby of the hotel; Major was naked, and Spaulding was screaming and yelling at the desk clerk to call the police. Believing people were still out to get him, Spaulding took the elevator to the

---

[3] Spice is a class of synthetic cannabinoids.

2

sixth floor of the hotel and ran down the hall, banging on doors and yelling for help and for someone to call 911. He then fled down the stairs, leaving Major inside the hotel.

Spaulding got into Major's truck and drove to a nearby Stop-n-Go Liquor/Convenience Store. It was about 2 a.m. at this point. A store employee, Kahmal Zahden, was on his way out the door with his friend, as Zahden's shift had just ended. The other store employee, Denny Davis, was inside. Spaulding rushed into the store, shoving Zahden and his friend back inside, and pulled the door behind him, all the while waving his arms and screaming for help, saying someone was trying to rob and kill him. When Zahden picked up the phone to call 911, Spaulding jumped over the counter and wrestled with him for the phone. When Zahden grabbed the store gun which was kept under the counter, Spaulding fought with him for that too. When the gun fell to the floor, Spaulding grabbed it and shot Davis, who fell to the ground. Spaulding fired shots at Zahden, missed, then fatally shot Davis 3-4 more times before leaving the store on foot with the gun and continuing down the street, screaming.

A nearby resident, Mark Adair, was out back of his house smoking a cigarette when he heard someone screaming. Adair went into his house and looked out the front window and saw a guy run up to his door and try to get in. As Adair approached the door to keep the guy from entering, the guy shot the lock off. The bullet stopped by a couch where Adair's teenage son slept.

3

Adair's 5-month-old daughter was in the next room, which was not too far from where the bullet ended up. Adair said the shooter did not enter his home.

Spaulding ran to the house next door where Sean Allender resided with his roommate. Allender heard screaming and pounding on the window of his house and called the police. Allender's bedroom window broke and the loaded handgun went through it. Spaulding did not enter but rather ran back to Major's truck and drove off.

Detective Vito spotted Major's truck as matching the description of the one involved in the shooting at the convenience store and pulled behind it at a red light, activating the sirens and lights. Spaulding ran the red light and a police pursuit ensued down I-65. As Spaulding approached the ramp to the Waterson Expressway, he did a U-turn, hit a wall/rail of the expressway and jumped out of the truck while it was still in gear. He stood up, put his hands up and walked toward the officers yelling, "Just kill me, just kill me!" It took multiple officers to subdue Spaulding and get him on an ambulance stretcher. Spaulding bit one of the officers on the arm. In the ambulance and at the hospital, Spaulding remained paranoid, shouting and yelling for help. Eventually, Spaulding was discharged from the hospital to jail.

Spaulding was indicted on 13 counts, including murder, criminal attempt to murder, first-degree robbery, first-degree burglary, criminal attempt to commit burglary, four counts of wanton endangerment, tampering with physical evidence, first-degree fleeing/evading police, third-degree assault, and

4

first-degree criminal mischief.[4]  Ultimately, the jury found Spaulding guilty of wanton murder of Davis, four counts of first-degree wanton endangerment (one count as to Zahden, and three counts as to Adair and his two children in the path of the shot fired into the lock of Adair's door), and first-degree fleeing/evading police.  The jury recommended a sentence of thirty years for wanton murder and three years each on the remaining convictions, with the three-year sentences to run concurrently with each other, and consecutively to the thirty-year sentence, for a total sentence of thirty-three years.  The trial court imposed the recommended sentence and this appeal followed.

## II. Analysis.

### A. The Wanton Murder Jury Instruction Was Proper.

Spaulding argues the trial court abused its discretion by instructing the jury on wanton murder, as that instruction was not supported by the evidence.  At trial, Spaulding objected to the wanton murder instruction on grounds that he did not act wantonly because he was not "aware of and consciously disregarded a substantial and unjustifiable risk that the result will occur."  Spaulding also moved for a directed verdict on this charge.  The trial court overruled his objection and denied his directed verdict motion.

"When the question is whether a trial court erred by: (1) giving an instruction that was not supported by the evidence; or (2) not giving an

_____

[4] The charges of criminal attempt to commit burglary and first-degree criminal mischief were dismissed prior to trial.  During trial, the charges of first-degree robbery and first-degree burglary were dismissed.

instruction that was required by the evidence; the appropriate standard for appellate review is whether the trial court abused its discretion." *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015). An abuse of discretion occurs if the trial court's ruling is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

> The jury was instructed as follows on the wanton murder charge:[5]
>
> You will find the Defendant, James Spaulding, guilty under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt, all of the following:
>
> (A) That in Jefferson County, Kentucky, on or about February 4, 2016, James Spaulding killed Denny Davis by shooting him with a handgun; AND
>
> (B) That in doing so, James Spaulding was wantonly engaging in conduct which created a grave risk of death to another and thereby caused the death of Denny Davis under circumstances manifesting an extreme indifference to human life.

The following definition of "wantonly" was included in the jury instructions:

> A person acts wantonly with respect to a result or circumstance when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts wantonly with respect thereto.[6]

---

[5] This instruction mirrored the definition of wanton murder set forth in KRS (Kentucky Revised Statutes) 507.020(1)(b): "(1) A person is guilty of murder when: . . . (b) Including, but not limited to, the operation of a motor vehicle under circumstances manifesting extreme indifference to human life, he wantonly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person."

[6] This definition mimics that found in KRS 501.020(3).

Spaulding maintains that because of his state of mind, he was unable to form the requisite mental state required of wanton murder. Spaulding further asserts that because he did not seek violence when he entered the convenience store, he did not meet the definition required for a finding of wantonness. In support, Spaulding points out that he was not brandishing a gun or other weapon when he entered the Stop-n-Go.

However, Spaulding overlooks the last sentence included in the statutory definition of "wantonly," which was included in the jury instructions: "A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts wantonly with respect thereto." KRS 501.020(3). Thus, under the plain language of the statute, voluntary intoxication does not negate the existence of an element of wanton murder. *See also Nichols v. Commonwealth*, 142 S.W.3d 683, 689 (Ky. 2004) (holding that "voluntary intoxication, which does negate an element of specific intent offenses, does not negate any element of Wanton Murder, particularly the mens rea of 'wantonness[]'") (citing *McGuire v. Commonwealth*, 885 S.W.2d 931, 934 (Ky. 1994) (holding that "[v]oluntary intoxication does not negate culpability for a crime requiring a culpable mental state of wantonness or recklessness, but it does negate specific intent[]")).

The "extreme nature" of a defendant's intoxication can be "sufficient evidence from which a jury could infer wantonness so extreme as to manifest extreme indifference to human life." *Walden v. Commonwealth*, 805 S.W.2d

7

102, 105 (Ky. 1991), *overruled on other grounds by Commonwealth v. Burge*, 947 S.W.2d 805 (Ky. 1996). Such a determination is a question of fact for the jury. *Id.* "If the jury determines that, under the given circumstances, a defendant's conduct rises to the level of aggravated wantonness, then the jury could find 'extreme indifference to human life' as required by the statute." *Ramsey v. Commonwealth*, 157 S.W.3d 194, 197 (Ky. 2005) (citation omitted).

Here, evidence was presented that Spaulding's paranoia and hallucinations were fueled by his voluntary drug binge that took place over the course of days, during which time he ingested a variety of drugs to become, and remain, extremely intoxicated. Spaulding testified at trial that he had smoked spice and methamphetamine together in the past, and knew the effects it could have, but that they had never made him hallucinate or paranoid like this. He also testified in detail about the events leading up to him fatally shooting Davis, as well as the events that took place after. He recalled shooting Davis, with both hands on the gun, and admitted that neither Zahden nor Davis ever pointed a gun at him.

The video recording of what transpired in the convenience store was played for the jury at trial, and both Zahden and his friend who was with him that night testified. That evidence showed Spaulding forcing his way into the store door, shoving Zahden and his friend inside, and pulling the door shut behind him. Once in the store, Spaulding ran around like a maniac, demanded that Zahden call 911, and then jumped over the counter and grabbed the phone before Zahden even had time to call. When he took the phone away

8

from Zahden, he glanced at it then tossed it over the counter. Mayhem continued when Spaulding wrestled with Zahden for the gun. Spaulding shot Davis, who was simply standing to the side the entire time. Spaulding then shot at Zahden through the glass door. Both times he ran by Davis he casually fired down at him. Spaulding shot Davis a total of 4-5 times before exiting the store with the gun in hand.

The fact that Spaulding may not have been seeking to kill when he entered the convenience store is not dispositive, as wanton murder does not require premeditation. From the evidence presented at trial, a reasonable jury could have concluded that Spaulding's continuous ingestion of spice, marijuana, methamphetamine and alcohol over the course of days, and his decision to ride around Louisville high on drugs in Major's truck, and enter the Stop-n-Go in his condition, was behavior "so extreme as to manifest extreme indifference to human life." A reasonable jury could have also concluded that Spaulding's actions after entering the store created "a grave risk of death to another person and thereby cause[d] the death of another person." KRS 507.020(1)(b). Because the evidence supported an instruction on wanton murder, the trial court did not abuse its discretion in so instructing the jury.

### B. No Moss Violation Occurred.

Spaulding claims the Commonwealth's question on cross-examination asking him to characterize another witness's testimony as lying was impermissible and in violation of *Moss v. Commonwealth*, 949 S.W.2d 579 (Ky. 1997). Spaulding further maintains that the Commonwealth's question

9

constituted prosecutorial misconduct and damaged his credibility as a witness so severely as to warrant a new trial.

In *Moss*, this Court held that an attorney may not ask a witness to characterize another witness's testimony as lying. *Id.* at 583. In the case at bar, a resident who lived in the apartment complex adjacent to the Stop-n-Go, Craig Benefield, testified that on the night in question, he and his friend heard tires screeching, and witnessed from the fourth story window Spaulding pull into the convenience store parking lot, exit the F-150 truck and enter the convenience store. Benefield testified that thereafter, he heard gunshots, saw Spaulding leave the store, and watched Spaulding bang on the door of a nearby house, then shoot through the door lock with a gun. Spaulding then went to another house; Benefield testified that he saw him make a distinctive arm movement, a punching motion, then broke the window. Benefield stated that he did not know what went through the window. He then observed Spaulding drive off in the F-150 truck.

The day after Benefield testified, Spaulding testified that after he shot the lock off the door of one house, he knocked on the window of the next house, and that's when the gun slipped out of his hand and fell through the window. On cross examination, he admitted that he had to have been banging hard on the window for the gun to go through it. At that point, the prosecutor confirmed with Spaulding that he had been in court the day before and had heard Benefield recall seeing him reach his arm back and throw something through the window. The prosecutor asked Spaulding if Benefield was lying.

10

Before Spaulding could answer, his attorney asked to approach the bench. There, defense counsel said that case law was clear that the prosecutor could not ask Spaulding to characterize another witness's testimony as lying. The prosecutor said that was fine, the judge did not rule, the attorneys immediately returned to their seats and the prosecutor moved on to a new question.

Spaulding now claims the prosecutor's question violated *Moss*, amounted to prosecutorial misconduct, and the trial court failed to cure the misconduct with an admonition to the jury. *See Duncan v. Commonwealth*, 322 S.W.3d 81, 87 (Ky. 2010) (holding that "prosecutorial misconduct can assume many forms, including improper questioning . . . . If the misconduct is objected to, we will reverse on that ground if proof of the defendant's guilt was not such as to render the misconduct harmless, and if the trial court failed to cure the misconduct with a sufficient admonition to the jury[]").

The Commonwealth argues that this claim of error was not preserved, as Spaulding's trial counsel requested no relief and was satisfied with the prosecutor's agreement not to pursue the question. "Failing to request an admonition is generally regarded as trial strategy, and therefore waives the issue on appeal." *Luna v. Commonwealth*, 460 S.W.3d 851, 876 n.52 (Ky. 2015) (citations omitted). In *Luna*, the prosecutor asked a prior-bad-acts question, defense counsel objected, the prosecutor withdrew the question, and defense counsel did not request an admonition. As a result, this Court noted that Luna's preservation of the issue for appellate review was based on a pre-trial objection, not the objection at trial. *Id.* at 876.

11

Similarly, here, defense counsel was satisfied with the prosecutor moving on to the next question, and requested no further relief from the trial court, in the form of a formal ruling on the objection or an admonition to the jury. Thus, Spaulding's claimed error is unpreserved and reviewable for palpable error only under RCr[7] 10.26, which provides:

> A palpable error which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

"Palpable error relief is available under RCr 10.26 only upon a determination that manifest injustice has resulted from the error. 'Manifest injustice' is 'error [that] so seriously affect[s] the fairness, integrity, or public reputation of the proceeding as to be 'shocking or jurisprudentially intolerable.'" *Davidson v. Commonwealth*, 548 S.W.3d 255, 261 (Ky. 2018) (quoting *Miller v. Commonwealth*, 283 S.W.3d 690, 695 (Ky. 2009)).

Spaulding has failed to show that the prosecutor's single, isolated question which was immediately objected to, and which Spaulding did not answer, so seriously affected the fairness of his trial as to be "shocking or jurisprudentially intolerable." Spaulding further claims the Commonwealth compounded the error by stating the following during closing argument:

> You have to judge the credibility of each and every witness. Every individual who takes this stand, you get to decide if you want to believe them. But you all heard from Craig Benefield. This is someone who is unbiased. He gains nothing from coming in here to testify. He witnessed the defendant's entire actions. He told you

---

[7] Kentucky Rules of Criminal Procedure.

he saw the defendant reach back and his arm go like this [throwing motion].

The prosecutor's statement during closing argument that Benefield was an unbiased witness, and the demonstration of a throwing motion, was not objected to by defense counsel. Moreover, "all of the comments must be viewed through the lens of the wide latitude counsel is afforded in closing arguments. They are, after all, just that—*arguments*. 'A prosecutor may comment on tactics, may comment on evidence, and may comment as to the falsity of the defense position.'" *Dickerson v. Commonwealth*, 485 S.W.3d 310, 332 (Ky. 2016) (quoting *Slaughter v. Commonwealth*, 744 S.W.2d 407, 412 (Ky. 1987)). The prosecutor's statement contrasting the credibility of the witnesses was within bounds of the wide latitude afforded to counsel during closing arguments and certainly did not rise to the level of palpable error. Moreover, the jury was not convinced that Spaulding tried to dispose of the handgun to make it unavailable, as it found him not guilty of tampering with physical evidence and not guilty of first-degree wanton endangerment in relation to throwing the gun through the window of Allender's home. So even if any error had occurred, it was harmless.

### C. *Spaulding's Claim of Error Regarding Mitigating Evidence is Unreviewable.*

Spaulding contends the trial court abused its discretion by not allowing him to present details of his prior convictions during the sentencing phase of trial, in violation of Kentucky's Truth-in-Sentencing statute, KRS 542.055. Specifically, he argues that he should have been permitted to elicit details of

13

his prior convictions during cross examination of Shana Farmer, the paralegal who testified about the records of his prior convictions. He requested to do so during the sentencing phase and in his Motion for New Trial or Judgment Notwithstanding the Verdict.

We review a trial court's evidentiary rulings for an abuse of discretion. *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000). Similarly, we review a trial court's denial of a motion for a new trial under an abuse of discretion standard. *See Anderson v. Commonwealth*, 63 S.W.3d 135, 141 (Ky. 2001). An abuse of discretion occurs if the trial court's ruling is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *English*, 993 S.W.2d at 945.

KRS 532.055, known as the "Truth-in-Sentencing" statute, "is geared toward providing the jury with information relevant to arriving at an appropriate sentence for the particular offender." *Beard v. Commonwealth*, 581 S.W.3d 537, 547 (Ky. 2019) (citation omitted). KRS 532.055(2)(a) allows the Commonwealth to offer evidence relevant to sentencing including the nature of prior offenses for which a person was convicted.[8] In this regard, "evidence of

---

[8] KRS 532.055(2)(a) provides, "Evidence may be offered by the Commonwealth relevant to sentencing including: 1) Minimum parole eligibility, prior convictions of the defendant, both felony and misdemeanor; 2) The nature of prior offenses for which he was convicted; 3) The date of the commission, date of sentencing, and date of release from confinement or supervision from all prior offenses; 4) The maximum expiration of sentence as determined by the division of probation and parole for all such current and prior offenses; 5) The defendant's status if on probation, parole, postincarceration supervision, conditional discharge, or any other form of legal release[.]"

14

prior convictions is limited to conveying to the jury the elements of the crimes previously committed." *Mullikan v. Commonwealth*, 341 S.W.3d 99, 109 (Ky. 2011). KRS 532.055(2)(b) provides that "[t]he defendant may introduce evidence in mitigation or in support of leniency" during the sentencing phase. *See also Beard*, 581 S.W.3d at 548 (holding that the defendant "may introduce relevant penalty-phase mitigation testimony concerning his motive for committing the crimes[]").

Here, the Commonwealth introduced evidence of Spaulding's prior convictions through Farmer, who testified about Spaulding's 2005 felony conviction in Indiana for the 2004 offense of dealing in cocaine; his 2008 felony conviction and sentence in Kentucky for the 2003 offenses of first-degree possession of a controlled substance (cocaine) and giving an officer a false name and address; and half a dozen separate Jefferson County misdemeanor convictions. On cross examination, defense counsel asked Farmer if she was aware that the trafficking conviction involved approximately 2.7 grams of cocaine. She stated she did not know.

The Commonwealth objected; at the bench, it argued that under Truth-in-Sentencing, the parties could not go into details about the prior convictions. Defense counsel responded that the Commonwealth could not, but it could. Neither party provided any legal authority in support of its position. The trial court sustained the Commonwealth's objection. Defense counsel did not proffer the excluded evidence by way of avowal.

15

Defense counsel then clarified with Farmer that Spaulding's other felony conviction was for possession of cocaine and the other convictions were misdemeanors. Defense counsel further emphasized that the cocaine offenses occurred in 2003 and 2004 – fourteen to fifteen years ago. Spaulding argued in his Motion for New Trial or Judgment Notwithstanding the Verdict that at a minimum, he should have been permitted to have Farmer read the indictments for both felony offenses, to inform the jury that the amounts of cocaine were small. Specifically, Spaulding was concerned that the trafficking in cocaine conviction and sentence was highly prejudicial, as it implied a large amount of cocaine was involved. In his motion, Spaulding provided no legal authority in support of his position and did not tender evidence of the prior indictments or details he wished to proffer. The trial court denied his motion.

Before reaching the merits of Spaulding's argument, we must address the Commonwealth's assertion that this claim of error is unreviewable since Spaulding failed to include the indictments and plea sheets setting forth details of his prior offenses. Without a complete record, the Commonwealth argues that this Court cannot assume that the plea sheets or any information about his prior felony offenses contained relevant mitigating evidence.

"It is incumbent upon Appellant to present the Court with a complete record for review." *Chesnut v. Commonwealth*, 250 S.W.3d 288, 303 (Ky. 2008) (citations omitted). When the record is incomplete, this Court must assume that the omitted record supports the trial court. *Id.*

16

The record does not contain the indictments or plea sheets of Spaulding's prior felony convictions. At no point during his cross examination of Farmer or in his motion for post-trial relief did defense counsel seek to introduce copies of these documents into the record, either by avowal or otherwise. Spaulding's criminal history conviction report to which Farmer testified did not contain details of the convictions other than the date, offense, conviction and sentence. As such, Farmer was unable to verify whether Spaulding's trafficking in cocaine conviction involved 2.7 grams, or another amount.

Even assuming the evidence Spaulding sought to admit falls within the purview of the Truth-in-Sentencing statute, based on the incomplete record, we are unable to confirm the evidence contains any basis for mitigation or leniency. While Spaulding is correct that in *Wood v. Commonwealth*, the Court of Appeals held that the defendant may present mitigating evidence relating to details of a prior serious offense, in that case the attendant "circumstances [of the prior offense] were in the record; the testifying witness used the plea sheets, which included the details of the crime." 432 S.W.3d 726, 729 (Ky. App. 2014). In *Wood*, defense counsel introduced the plea sheets by avowal following the trial court's ruling excluding presentation of that evidence. Therefore, the appellate court had an evidentiary basis on which to determine that the trial court's exclusion of that evidence was erroneous. By contrast, since those details are not in the record here, we are compelled to hold that the silent record supports the trial court's decision not to allow Spaulding to present details of his prior convictions.

17

## III.   Conclusion.

For the foregoing reasons, we affirm Spaulding's convictions and sentence.

All sitting.  All concur.

COUNSEL FOR APPELLANT:

Karen Shuff Maurer
Assistant Public Advocate
DEPARTMENT OF PUBLIC ADVOCACY

COUNSEL FOR APPELLEE:

Daniel Jay Cameron
Attorney General of Kentucky

James Daryl Havey
Assistant Attorney General

Jason Bradley Moore
Assistant Attorney General