FARMERS' & TRADERS' NAT. BANK OF COVINGTON, KY., v. GREENE
et al.

(Circuit Court of Appeals, Sixth Circuit. May 25, 1896.)

No. 361.

PRACTICE—STRIKING OUT EVIDENCE—TIME OF OBJECTION.

When evidence which may have been irrelevant, or otherwise open to an objection seasonably taken, has been admitted without objection, the witness being examined and cross-examined by the respective parties, it is not error to deny a motion to strike out such evidence, made after its tendency and effect have been disclosed.

In Error to the Circuit Court of the United States for the District of Kentucky.

This was a suit brought by the defendants in error against the Farmers' & Traders' National Bank of Covington, the plaintiff in error, to recover damages for the alleged negligence of the bank in forwarding and presenting for payment three drafts made by the plaintiff below upon the New Jersey Sheep & Wool Company, a corporation organized under the laws of New Jersey, and doing business at Jersey City, in that state. The particulars of the case are these: The plaintiffs below, Thomas M. Greene and Talton Embrey, as partners doing business under the firm name of Greene & Embrey, had been for some time engaged in the business of buying, selling, and shipping live stock from Cincinnati, Ohio, and other places, to parties in the Eastern states, and, among others, to the New Jersey Sheep & Wool Company. Upon the occasion out of which the present controversy has arisen, Greene & Embrey had sold and shipped by rail to the said New Jersey Sheep & Wool Company, at Jersey City, several car loads of live-stock, and drew three drafts upon that company for the price of the stock thus shipped. The first of these drafts was made and dated on June 30, 1893, for the sum of $3,993.72, payable on demand, without grace, which draft they deposited with the Farmers' & Traders' National Bank, on the day of its date, for collection. On July 1, 1893, they drew a like draft on the same company for the sum of $4,097.69, and deposited it with the said bank for collection. And on the 3d of the same month they drew another like draft on the same company for the sum of $658.31, which they also deposited with the bank for collection. Thus all of the drafts were payable on presentation. No bill of lading was attached to these drafts, and Greene & Embrey had no security for the payment of the price of the stock which they had shipped. In accordance with the usual course of business, the Farmers' & Traders' National Bank sent forward these several drafts to their correspondent, the Hanover National Bank of New York City, and that bank in turn transmitted the drafts to the First National Bank of Jersey City, to the end that the last-named bank should there present to the drawee at that place the several drafts for payment. The 2d of July was Sunday. By the usual course of mail the first two of the above-mentioned drafts would have reached the Hanover National Bank as early as the opening on the morning of Monday, July 3d, and it appeared upon the trial that the drafts were in the hands of the Hanover National Bank at that time; but for some reason they were not received by the First National Bank of Jersey City until the forenoon of Wednesday, the 5th of July. The 4th of July being a holiday, no business was done by the banks of New York and Jersey City on that date. The First National Bank of Jersey City presented the drafts to the drawee for payment some time after the hour of 3 o'clock p. m. on July 5th, when payment was refused. The New Jersey Sheep & Wool Company had been in failing circumstances for some time previous, but continued to pay its obligations up to the hour of 3 p. m. on the 5th of July, when, having at about that hour made an assignment, it succumbed and closed its doors. The evidence tended to show that if the drafts had been presented on the 3d of July, or (probably) at the opening for business of the banks on the morning of the 5th, or soon after, the drafts would have been paid. The result was, as the evidence tended to show,

that Greene & Embrey lost the amount represented by the first two drafts. It appears from the record that the draft for $658.31 was subsequently satisfied through legal proceedings taken for the collection of the amount represented by it, so that when the trial of this case took place the matter in controversy was restricted to the drafts for $3,993.72 and $4,097.69, respectively. The case was tried before Circuit Judge Taft and a jury at Covington. Proof was offered of the facts and circumstances relating to the two drafts then remaining as the foundation of the controversy, and in the course of the trial it appeared by evidence which was not objected to that the draft for $658.31, drawn on the 3d day of July, was received by the First National Bank of Jersey City, and presented for payment at the same time with the other two drafts. The evidence with regard to the history of all three of the drafts was commingled, and until after the evidence was offered, and the arguments of counsel to the jury upon the facts were made, no distinction in respect to the competency and relevancy of the proof was taken by counsel on either side in respect of the several drafts. Before the court gave its instructions to the jury, however, counsel for the defendant below moved the court "to exclude from consideration from the jury and from the case, as evidence, the draft of date July 3, 1893, in amount $658.31, and all the testimony in relation thereto." This motion was overruled by the court, and counsel for the defendant excepted. The counsel for the defendant further moved the court "to charge the jury to find its verdict for it (the defendant)." That motion was also overruled, and the court refused to so instruct the jury, and to this counsel for the defendant also excepted. Other exceptions were taken during the course of the trial, but none of them related to the particular matters upon which the case was presented in this court, or considered by the court in announcing its opinion. In its instructions to the jury the court referred to the evidence tending to show that the draft of the 3d of July, and which presumably did not reach New York until the evening of the 4th and the bank on the morning of the 5th, was presented on the 5th of July, as evidence competent to be considered upon the question of the diligence of the Hanover National Bank in forwarding the first two drafts for collection. No exception was taken by counsel for the defendant below to this reference by the court to that part of the testimony. The jury rendered a verdict for the plaintiff for the sum of $8,998.43, the amount of the drafts of June 30th ($3,993.72) and July 1st ($4,097.69), with interest.

J. W. Bryan, for plaintiff in error.

Charles Fisk, for defendants in error.

Before LURTON, Circuit Judge, SEVERENS, District Judge, and HAMMOND, J.

SEVERENS, District Judge, having stated the case as above, delivered the opinion of the court.

Six supposed errors are assigned upon the proceedings at the trial of this case, only two of which, however,—the first and the fourth,—are founded upon exceptions duly taken. The second error assigned is a mere elaboration of the first, specifying a number of particular parts of testimony which the court refused to exclude upon the motion made, as above stated, at the close of the testimony and the arguments, and is the same matter the refusal to exclude which is made the subject of complaint in the first of the errors assigned. The third of the errors assigned relates to the reference by the court, in its charge to the jury, to the evidence in regard to the time required for transmission and presentation of a draft from Covington to Jersey City, as bearing upon the question of negligence in respect of the two drafts of the 30th of June and the 1st of July, respectively. It is manifest that, if the court was

right in its refusal to exclude the evidence in relation to that third draft from the jury, that testimony must be admitted to have remained in the case, and was proper matter for the comment which the court made upon it. But, short of this, it is enough to say that there was no exception taken to any part of the charge of the court to the jury, and hence there is no proper foundation for this assignment of error. The fifth and sixth of the supposed errors complain of the rendition of the judgment which ensued upon the verdict of the jury, and, in themselves, allege no error, independently of the supposed error of the court in refusing to instruct the jury to find its verdict for the defendant. The only exceptions necessary to be considered, therefore, are those taken upon the refusal of the court to strike out all the evidence relating to the draft for $658.31, of the 3d of July, and in the court's further refusal to instruct the jury to find a verdict for the defendant.

In respect to the first exception, it is to be observed that the objection upon which it rests was not taken at the time of the introduction of the evidence. The witnesses testifying in reference to that matter were examined in chief by counsel for the plaintiff, and were cross-examined by counsel for the defendant, without any suggestion of irrelevancy, and the objection was not started until the arguments to the jury had been closed. After having waited until the tendency of the evidence had been developed, and its effect upon the case indicated, it was too late to raise the objection. A party cannot be permitted to lie by, and experiment upon the testimony, and ascertain what might come of it, for benefit or disadvantage, and then, if it turns out to be unpropitious for him, seek to exclude it altogether. This is a well-settled rule in practice, in dealing with evidence upon the trial of cases both civil and criminal. Brockett v. Steamboat Co., 18 Fed. 156; Schuchardt v. Allens, 1 Wall. 359; Teal v. Bilby, 123 U. S. 572, 8 Sup. Ct. 239; Benson v. U. S., 146 U. S. 325, 13 Sup. Ct. 60. We do not mean to say that this rule would apply to a case where the irrelevant evidence had crept into the trial by inadvertence, or without negligence on the part of counsel. In such case the objection might be subsequently taken, if it is done seasonably, and in such a manner as not to prejudice the other party. In the present instance we are dealing with a case where the irrelevancy, if it was such, was at all times obvious, and where the record shows that the complaining party took his chances of profiting by the testimony. It might be that the evidence relating to the draft of July 3d was irrelevant, because it was not at the time of the trial the subject of controversy, and that, for that reason, evidence of the length of time which, on a particular occasion, had sufficed for transmission and presentation of the draft, would have been open to objection, if seasonably taken, and that if it had been taken at the proper time the court should have excluded it, but it is not necessary for us to express any opinion upon that question, in the circumstances of the present case.

The second of the exceptions above referred to was taken to the refusal of the court to allow the motion of defendant's counsel for

instructions to the jury to render a verdict for the defendant. But, having looked into the evidence as exhibited by the bill of exceptions, we are all agreed that, while the recovery stands on narrow grounds, there was sufficient to require the court to submit the questions at issue to the jury for their determination; the tendency of the evidence being to establish the facts collected in the statement preceding this opinion, and to support the verdict. That being so, it was a question for the jury to decide whether the alleged negligence of the plaintiff was made out. It has not been controverted in this case that the negligence of the Hanover National Bank, if any such existed, is chargeable to the plaintiff in error, and imposed upon the latter a liability to Greene & Embrey, because it undertook the collection of the drafts. As we find no error in the rulings of the court below, the judgment must be affirmed.