**Roy Lee WILLIAMS, Movant,**

v.

**COMMONWEALTH of Kentucky, Respondent.**

Supreme Court of Kentucky.

June 3, 1980.

Rehearing Denied Sept. 2, 1980.

Jack Emory Farley, Public Advocate, J. Vincent Aprile, II, C. Thomas Hectus, Asst. Public Advocates, Frankfort, for movant.

Steven L. Beshear, Atty. Gen., Victor Fox, Penny R. Warren, Asst. Attys. Gen., Frankfort, for respondent.

PALMORE, Chief Justice.

Roy Lee Williams was convicted of rape and was sentenced to 15 years in prison. This court granted his motion for discretionary review of a decision by the Court of Appeals affirming the judgment. Of principal concern in our granting the review was the denial of Williams' motion to strike certain of the Commonwealth's evidence on the basis of its failure to establish the integrity of the physical items on which it was founded. We have determined, however, that the motion was not timely and that there was no error.

Janice Dunaway, 14-year-old daughter of a woman with whom Williams was living, accused him of raping her. After she told her mother about it the incident was reported to the police authorities. Trooper Steve Duff took Janice to a hospital, where she

was examined by a Dr. Ahmad. When they met Dr. Ahmad, Trooper Duff handed him a rape-kit containing swabs, combs, plastic bags and an instruction sheet. After he had examined Janice in private, Dr. Ahmad returned the kit to Trooper Duff and also gave him Janice's panties. The panties were placed in a paper bag, which was then initialed by the officer and by the doctor. Janice testified that these items of evidence were delivered by the doctor to Trooper Duff in her presence. In response to the question, "At the time he got your panties were . . . they were in the same condition as they were when you took them off?" She answered, "Uh huh."

From this point on there was no deficiency in the chain of custody. Trooper Duff caused the exhibits, including Janice's panties, to be examined at the state police laboratory in Frankfort and introduced them as an exhibit with his testimony. When the exhibit was admitted, the trial court specifically asked defense counsel whether he had any objection, to which he replied, "No, sir." In due course the expert witness who had performed the laboratory examination testified that he found semen in the panties and in the vaginal swabs and that in the victim's pubic hair combings he found two brown hairs different from the samples of her own hair. Again there was no objection to the reception of this testimony.

The alleged missing link in the chain of custody was Dr. Ahmad, who did not testify, but no question was raised in this regard until the Commonwealth had rested its case in chief, at which time defense counsel moved that the evidence "relating to the samples that were forwarded to the laboratory be stricken" because there had been no testimony from Dr. Ahmad that the items given by him to Trooper Duff had been taken from Janice and were in the same condition as when taken. The motion was denied upon the ground that it was not timely.

■ Assuming (but without so deciding) that Janice was not in a position to say whether the items handed by the doctor to Trooper Duff were the same ones taken from her person, and in the same condition, it is clear that the chain of custody was not properly established. The right time to object, however, was when the damaging evidence was offered, and before it had been heard by the jury. As it was, the testimony of another witness and a re-examination of both Duff and Janice Dunaway took place after the laboratory expert left the witness stand and before the motion to strike was offered.

■ Defense counsel contended, in effect, that until the Commonwealth had announced the completion of its evidence in chief it still had an opportunity to qualify the evidence by filling the gap. Had objections been interposed when the evidence was proffered, and if the trial court had expressly admitted it subject to the laying of a proper foundation, then a motion to strike would have been in order when the Commonwealth rested without having laid the foundation; but when the evidence was let in without objection and without any qualification by the court there was no longer any necessity for an attempt to perfect it. A motion to strike is not an appropriate vehicle for revival of a neglected opportunity to object. See *Higdon v. Commonwealth*, Ky., 473 S.W.2d 110, 111 (1971); *Farmers' & Traders' Nat. Bank v. Greene*, 74 F. 439, 441, 20 CCA 500 (6th Cir. 1896).

■ Sometimes it happens that in an opening statement by counsel a jury is given damaging information that apparently would be admissible but which in fact is not thereafter produced during the trial, and of course in that instance opposing counsel is not in a position to raise the question until the party in whose behalf the statement was made completes his case in chief without having introduced evidence in support of the facts as previously represented. In that instance, assuming the unproved information is considered prejudicial, the appropriate procedural remedy is by motion for a mistrial. See *Senibaldi v. Commonwealth*, Ky., 338 S.W.2d 915, 919–920 (1960). In this case the Commonwealth's Attorney in his opening statement to the jury did disclose the results of the laboratory test, and

if the trial court had later excluded that evidence the defense probably would have had grounds for a mistrial, but that did not happen, and the evidence was made good by the absence of objection to it.

We find no other errors to justify a reversal.

The judgment of the trial court is affirmed.

PALMORE, C. J., and AKER, CLAYTON, LUKOWSKY, STEPHENSON and STERNBERG, JJ., sitting.

All concur.