Kinte Leeon BROWN, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 97–SC–000751–MR.

Supreme Court of Kentucky.

Sept. 3, 1998.

Frank Wm. Heft, Jr., Chief Appellate Public Defender, J. David Niehaus, Deputy Public Defender, Louisville, for Appellant.

A.B. Chandler, III, Attorney General, Todd D. Ferguson, Assistant Attorney General, Frankfort, for Appellee.

GRAVES, Justice.

Appellant, Kinte Brown, was convicted in the Jefferson Circuit Court of wanton murder and sentenced to twenty years imprisonment. He appeals to this Court as a matter of right.

The facts surrounding the murder are not in dispute. On November 20, 1996, Appellant and several others were at a friend's

house watching television. Dwayne Cardine took Appellant's pager from him and, after making a "playfully insulting remark," returned it upon request. Thereafter, Appellant reached under a couch and pulled out a .38 caliber handgun. Appellant placed the barrel of the gun at or near Cardine's head. According to Appellant and several witnesses, Appellant used his thumb to pull back the hammer of the gun. He was in the process of lowering the hammer when the gun discharged, striking Cardine in the head and causing his death. Appellant was subsequently charged with the intentional or wanton murder of Cardine.

At trial, Appellant testified that he had held the gun near Cardine's head but that the shooting was an accident. Appellant stated that he did not know whether the gun was loaded, but did concede that he was aware of some problem with the gun. The jury was instructed on wanton murder, second-degree manslaughter and reckless homicide. Appellant objected to the wanton murder instruction on the grounds that the Commonwealth had not proven the element of extreme indifference to human life. The jury subsequently convicted him of wanton murder and recommended a sentence of twenty years imprisonment. The trial court entered judgment accordingly.

For the first time on appeal, Appellant challenges the constitutionality of KRS 507.020(1)(b), the statute setting forth the offense of wanton murder. It is Appellant's position that KRS 507.020(1)(b) "amounts to an unconstitutional delegation of legislative authority because the element of extreme indifference to the value of human life is, by the admission of the drafters of the legislation, incapable of precise definition." The Commonwealth responds that this Court has on prior occasions condemned the practice of raising an issue for the first time on appeal, as the trial court is denied the opportunity to rule on the issue. *Williams v. Commonwealth*, Ky., 602 S.W.2d 148 (1980); *McDonald v. Commonwealth*, Ky., 554 S.W.2d 84 (1977); and *Jenkins v. Commonwealth*, Ky, 477 S.W.2d 795 (1972). Nonetheless, as Appellant has raised a constitutional question, we will review the merits of the issue.

Although Appellant has couched the issue in terms of a separation of powers question, it is evident from his argument that the true issue is whether KRS 507.020(1)(b) is void for vagueness. Appellant claims that the General Assembly has failed to establish valid standards for the administration and application of the wanton murder statute with respect to the element of extreme indifference to human life. The result, Appellant concludes, is that the jury is left to decide in each case what constitutes extreme indifference to human life. Appellant believes that if the General Assembly wishes to punish conduct falling under this concept, then it is required to define what the phrase means. Further, he argues that because such has not been done, the delegation violates Sections 27, 28 and 29 of the Constitution which reserves the authority to legislate exclusively to the General Assembly. Accordingly, Appellant argues that KRS 507.020(1)(b) must be declared unconstitutional and void.

Wanton murder is distinguished from second-degree (involuntary) manslaughter, KRS 507.040, which also punishes "wantonly caus[ing] the death of another person," by the additional element described in the phrase "under circumstances manifesting extreme indifference to human life." To punish wanton conduct as murder, it must be conduct as culpable as intentional murder. "[T]he culpable mental state defined in KRS 507.020 as 'wantonness,' . . . without more, will suffice for a conviction of manslaughter in the second degree but not for murder because, to qualify as 'murder,' 'a capital offense,' it must be accompanied by further 'circumstances manifesting extreme indifference to human life.'" *McGinnis v. Commonwealth*, Ky., 875 S.W.2d 518, 520 (1994) (citing Commentary to KRS 507.020).

Appellant is correct in his observation that extreme indifference to human life is not a phrase capable of precise definition, and the drafter of the Model Penal Code and the Kentucky Penal code admitted as much.

There is a kind of [wanton] homicide that cannot fairly be distinguished . . . from homicides committed [intentionally]. [Wantonness] . . . presupposes an aware-

ness of the creation of substantial homicidal risk, a risk too great to be deemed justifiable by any valid purpose that the actor's conduct serves. Since risk, however, is a matter of degree and the motives for risk creation may be infinite in variation, some formula is needed to identify the case where [wantonness] should be assimilated to [intention]. The conception that the draft employs is that of extreme indifference to the value of human life. The significance of [intention] is that, cases of provocation apart, it demonstrates precisely such indifference. Whether recklessness is so extreme that it demonstrates similar indifference is not a question that, in our view, can be further clarified; it must be left directly to the trier of the facts. If recklessness exists but is not so extreme, the homicide is manslaughter....
KRS 507.020, Commentary; Model Penal Code, § 201.2, Comment 2.

Similarly, this Court has on several occasions held that whether wanton conduct demonstrates extreme indifference to human life is a question to be decided by the trier of fact. *Walden v. Commonwealth*, Ky., 805 S.W.2d 102 (1991), *overruled on other grounds, Commonwealth v. Burge*, Ky., 947 S.W.2d 805 (1997); *Nichols v. Commonwealth*, Ky., 657 S.W.2d 932 (1983). However, the Commentary to the Model Penal Code of the American Law Institute notes that to qualify as "circumstances manifesting extreme indifference to human life," wanton killing must exhibit "purposeful or knowing" indifference, "conduct evidencing a 'depraved heart' with no regard for human life." A.L.I., Model Penal Code & Commentaries, Part II, § 210.2 (1980 ed.).

Moreover,

Attempting to emphasize that only the highest levels of unjustifiable homicidal risk should render an actor eligible for a murder conviction, the drafters of KRS 507.020(1)(b) provided illustrations of conduct sufficient to support findings of extreme indifference:

Typical of conduct contemplated for inclusion in "wanton" murder is shooting into a crowd, an occupied building or an occupied automobile; placing a time bomb in a public place; or derailing a speeding locomotive. [KRS 507.020, Commentary]

Setting this conduct apart from behavior that would not warrant an unintentional murder conviction are the following characteristics: (i) homicidal risk that is exceptionally high; (ii) circumstances known to the actor that clearly show awareness of the magnitude of the risk; and (iii) minimal or non-existent social utility in the conduct. Such conduct plainly reflects more than mere awareness and conscious disregard of a substantial and unjustifiable risk of death. It manifests a high disregard for life and evinces what the common law chose to call a depravity of mind or heart. As stated in a recent case, "a conviction of wanton murder is reserved exclusively for offenders who manifest virtually no concern for the value of human life." [*Johnson v. Commonwealth*, Ky., 885 S.W.2d 951, 952 (1994) ].

Lawson and Fortune, *Kentucky Criminal Law*, p. 322, § 8–2(c)(2) (1998).

Other jurisdictions faced with this issue have held that the phrase "extreme indifference to human life" does not render a wanton murder statute void for vagueness. In *State v. Robinson*, 261 Kan. 865, 934 P.2d 38 (1997), Appellant argued that the statute setting forth the offense of depraved heart second-degree murder, the unintentional but reckless killing under circumstances manifesting extreme indifference to human life, was void for vagueness because it did not adequately distinguish itself from reckless involuntary manslaughter. In upholding the statute, the Kansas Supreme Court stated,

We hold that depraved heart second-degree murder requires a conscious disregard of the risk, sufficient under the circumstances, to manifest extreme indifference to the value of human life. Recklessness that can be assimilated to purpose or knowledge is treated as depraved heart second-degree murder, and less extreme recklessness is punished as manslaughter. Conviction of depraved heart second-degree murder requires proof that the defendant acted recklessly under circumstances manifesting extreme

indifference to the value of human life. This language describes a kind of culpability that differs in degree but not in kind from the ordinary recklessness required for manslaughter.

*Id.* 934 P.2d at 48.

The Court concluded that, "[a] jury is expected to decipher many difficult phrases without receiving specific definitions, such as the term 'reasonable doubt.' The phrase 'extreme indifference to the value of human life' is not so vague as to be unconstitutionally void." *Id.*

Similarly, in *State v. Dow,* 126 N.H. 205, 489 A.2d 650 (1985), the Supreme Court of New Hampshire held that the words "extreme indifference to the value of human life" contained in the governing statute were not unconstitutionally void for vagueness. "The words 'extreme indifference to the value of human life' are easily understood. They are the equivalent of what is sometimes referred to as 'depraved heart murder,' which has long been a part of the law." *Id.* 489 A.2d at 651; *see also, Waters v. State,* 443 A.2d 500 (Del.1982) ("the words 'cruel, wicked and depraved indifference to human life' are words within a commonly accepted meaning" that is not unconstitutionally vague); *People v. Poplis,* 30 N.Y.2d 85, 330 N.Y.S.2d 365, 281 N.E.2d 167 (1972) (statute proscribing conduct "evincing a depraved indifference to human life" is sufficiently definite and the kind of conduct proscribed is sufficiently laid out to sustain a valid penal sanction.)

■ There is a strong presumption of validity of statutes. *United States v. National Dairy Products Corp.,* 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). A criminal statute which either forbids or requires an act in terms so vague that men of common intelligence must guess at its meaning lacks the essential of due process of law. *Thomas v. Commonwealth,* Ky.App., 574 S.W.2d 903 (1978). "The accepted test in determining the required precision of statutory language imposing criminal liability is whether the language conveys a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Sasaki v. Commonwealth,* Ky., 485 S.W.2d 897 (1972). However, all that is required of a statute is fairness. "Condemned to the use of words, we can never expect mathematical certainty from our language." *Payne v. Commonwealth,* Ky., 623 S.W.2d 867, 870 (1981) (quoting *Grayned v. City of Rockford,* 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972)).

■ We are of the opinion that the phrase "extreme indifference to human life" are words of common understanding, and further that the Commentary to the Penal Code sufficiently sets forth the type of conduct that will sustain a wanton murder conviction. As such, the General Assembly was not required to include a precise definition of the phrase within KRS 507.020(1)(b). It is the duty of the trier of fact to determine, under the given circumstances, whether a defendant's conduct rises to the culpable mental state equivalent to intentional murder. Therefore, we conclude that the statutory language in question in KRS 507.020(1)(b) is sufficient to withstand constitutional challenges for both vagueness and separation of powers.

Appellant's conduct in this case clearly justified his conviction for wanton murder. The conviction and sentence of the Jefferson Circuit Court is affirmed.

All concur.