RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0236p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

RAJON JAMISON,

*Defendant-Appellant*.

No. 22-1840

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Flint.
No. 4:19-cr-20798-1—Laurie J. Michelson, District Judge.

Decided and Filed:  October 26, 2023

Before:  KETHLEDGE, THAPAR, and MATHIS, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  Sanford A. Schulman, Detroit, Michigan, for Appellant.  Ann Nee, UNITED STATES ATTORNEY'S OFFICE, Flint, Michigan, for Appellee.

─────────────────

## OPINION

─────────────────

MATHIS, Circuit Judge.  Rajon Jamison challenges the enhanced sentence he received under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), after pleading guilty to a federal firearm offense.  We must decide whether a violation of Michigan's felony-firearm statute is a "violent felony" under the ACCA when a juvenile is convicted of that offense for possessing a firearm while committing second-degree murder.  For the reasons below, we hold that it is.  Thus, we affirm.

**I.**

In October 2019, officers in Flint, Michigan, recovered ammunition and three firearms from Jamison's suspected residence. A grand jury returned a one-count indictment against Jamison for being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1). The government referenced 18 U.S.C. § 924(e)—the ACCA—in the indictment because it believed that Jamison's criminal history qualified him for an ACCA sentence enhancement.

On the morning that Jamison's case was set for trial, he pleaded guilty to the § 922(g) violation without a plea agreement. At sentencing, the district court found that Jamison had the following prior convictions that were violent felonies under the ACCA: (1) a 1994 conviction as a juvenile in Michigan for second-degree murder and for felony firearm; (2) a 2011 conviction in Michigan for assault with intent to commit great bodily harm less than murder and for felony firearm; and (3) a 2012 conviction in federal court to one count of possession with intent to distribute controlled substances. The district court sentenced Jamison to 188 months' imprisonment.

Jamison timely appealed. Jamison argues that the district court erred in sentencing him under the ACCA because he does not have three prior convictions for violent felonies or serious drug offenses. And, assuming that the ACCA does not apply, Jamison argues that his non-ACCA sentencing range should be reduced by two offense levels. We address the arguments in turn.

**II.**

The ACCA mandates a severe increase in certain repeat offenders' sentences. It "enhances the sentence of anyone convicted under 18 U.S.C. § 922(g) of being a felon in possession of a firearm if he has three or more prior convictions," state or federal, that are a "violent felony or a serious drug offense, or both, committed on occasions different from one another." *Borden v. United States*, 141 S. Ct. 1817, 1822 (2021); 18 U.S.C. § 924(e)(1). If a defendant has three such prior convictions on his record at the time of his § 922(g) conviction,

the ACCA turns a "10-year maximum sentence . . . into a 15-year minimum one."**¹** *Borden*, 141 S. Ct. at 1822 (citations omitted).

We use the categorical approach to determine if a prior conviction qualifies as a violent felony or a serious drug offense. *United States v. Fields*, 53 F.4th 1027, 1043 (6th Cir. 2022); *United States v. Burris*, 912 F.3d 386, 392 (6th Cir. 2019) (en banc). Using that approach, "the facts of a given case are irrelevant." *Borden*, 141 S. Ct. at 1822. We instead look only to the elements of the alleged predicate offense and ask if it "'by definition, . . . falls within [the] category' of offenses described by the federal statute." *Fields*, 53 F.4th at 1043 (quoting *Mellouli v. Lynch*, 575 U.S. 798, 805 (2015)) (alteration in original).

In using the categorical approach, we "must presume that the [previous] conviction rested upon nothing more than the least of the acts criminalized under" the alleged predicate offense. *Id.* at 1043–44 (alteration in original). It is a hypothetical inquiry that asks if "'someone [could] commit [the] crime of conviction without' meeting the federal enhancement's criteria." *Id.* at 1044 (quoting *Pereida v. Wilkinson*, 141 S. Ct. 754, 762 (2021)) (alterations in original). If he can, then that conviction cannot serve as a predicate offense that warrants an enhancement.

As mentioned above, the district court found that Jamison's 1994 juvenile conviction, his 2011 conviction for assault with intent to commit great bodily injury and felony firearm, and his 2012 federal drug conviction were all violent felonies under the ACCA. We consider whether the district court erred.

**A.**

As an initial matter, Jamison has forfeited some of his sentencing challenges on appeal. A defendant forfeits issues raised on appeal that he fails to develop "in any meaningful way." *United States v. Kerley*, 784 F.3d 327, 340 (6th Cir. 2015); *see also United States v. Bradley*, 917 F.3d 493, 509 (6th Cir. 2019) (defendant "failed sufficiently to develop his lesser-included offense argument and thus forfeited the argument"). In his brief on appeal, Jamison asserts only "that his prior convictions including his conviction for conspiracy to commit armed robbery do

---

**¹**In 2022, Congress passed the Bipartisan Safer Communities Act which increased the penalty for a § 922(g) violation to 15 years from 10 years. 18 U.S.C. § 924(a)(8).

not qualify him as an armed career offender[.]"**2** D. 23 at p.25.  Jamison failed to develop this argument as it relates to his 2012 drug conviction and his 2011 conviction for assault with intent to commit great bodily injury and felony firearm.  He has therefore forfeited any challenge to the district court relying on these convictions as ACCA predicate offenses.

**B.**

That leaves Jamison's 1994 juvenile conviction for felony firearm and second-degree murder.  A juvenile conviction**3** qualifies as a violent felony under the ACCA's elements clause if it: (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another," (2) is punishable by imprisonment for more than one year; and (3) involves "the use or carrying of a firearm, knife, or destructive device."  18 U.S.C. § 924(e)(2)(B)(i); *United States v. Eubanks*, 617 F.3d 364, 369 (6th Cir. 2010).  We review a district court's finding that a crime is a violent felony under the ACCA de novo.  *United States v. Amos*, 501 F.3d 524, 526 (6th Cir. 2007) (citing *United States v. Hargrove*, 416 F.3d 486, 494 (6th Cir. 2005)).

Below, we consider whether Jamison's juvenile conviction for felony firearm under Michigan law qualifies as a violent felony under the ACCA, which in turns requires us to consider whether second-degree murder under Michigan law is a violent felony.

**1.**

A person is guilty of a felony-firearm offense under Michigan law when the person "carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony."  Mich. Comp. Laws Ann. § 750.227b(1).  Such a conviction "shall be punished by imprisonment for 2 years."  *Id.*  The elements of felony firearm are: (1) possessing a firearm (2) during the commission, or attempted commission, of another felony.  *People v. Avant*, 597 N.W.2d 864, 869 (Mich. Ct. App. 1999); *Sandoval Hernandez v. Barr*, 764 F. App'x 469,

---

**2**The district court did not find that Jamison's conviction for conspiracy to commit armed robbery qualified as an ACCA predicate offense.  Therefore, we need not consider any alleged error related to that conviction.

**3**The ACCA uses the term "act of delinquency."  An act of delinquency is nothing more than "[a] crime committed by a juvenile."  *United States v. Mekediak*, 510 F. App'x 348, 351 (6th Cir. 2013), *abrogated on other grounds by Shuti v. Lynch*, 828 F.3d 440 (6th Cir. 2016).

472 (6th Cir. 2019). But any felony could satisfy the another-felony element—including a felony that does not satisfy the ACCA's elements clause. This statute therefore is too broad to categorically qualify as a violent felony. And so, we must decide "whether the statute in question is divisible because it sets out multiple separate crimes." *Burris*, 912 F.3d at 393.

Michigan's felony-firearm statute is divisible because there are alternate ways to commit the crime. *See Sandoval Hernandez*, 764 F. App'x at 473–75; *Milton v. United States*, 35 F.3d 566, at *2 (6th Cir. 1994) (unpublished table decision). Specifically, each different felony that a defendant commits or attempts to commit while possessing a firearm constitutes an alternate way of violating the felony-firearm statute. Michigan's model jury instruction for felony firearm proves the point. It provides:

> (1) The defendant is also charged with the separate crime of possessing a firearm at the time [he/she] committed [or attempted to commit] the crime of _____.
>
> (2) To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> (3) First, that the defendant committed [or attempted to commit] the crime of _____, which has been defined for you. It is not necessary, however, that the defendant be convicted of that crime.
>
> (4) Second, that at the time the defendant committed [or attempted to commit] that crime [he/she] knowingly carried or possessed a firearm.

Mich. Model Crim. Jury Instruction § 11.34 (Mich. Sup. Ct. Comm. on Model Crim. Jury Instructions 2017). The "blank spaces indicate that the prosecution is required to prove that a defendant committed a specific underlying felony to obtain a felony-firearm conviction." *Sandoval Hernandez*, 764 F. App'x at 475. Therefore, the felony that underlies a felony-firearm offense is an element of the crime. *See People v. Morton*, 377 N.W.2d 798, 801 (Mich. 1985) ("[T]he Legislature intended, with only a few narrow exceptions,[4] that every felony committed by a person possessing a firearm result in a felony-firearm conviction."); *see also People v. Mitchell*, 575 N.W.2d 283, 285 (Mich. 1998); *Sandoval Hernandez*, 764 F. App'x at 474

---

[4]None of those exceptions applies here.

(holding that "the commission of a *particular* felony is an element of the offense" of felony firearm).

Because the felony-firearm statute is divisible, we use the modified categorical approach "to determine which alternative element in a divisible statute formed the basis of the defendant's conviction." *Descamps v. United States*, 570 U.S. 254, 278 (2013). This approach allows us to look past "the mere fact of conviction" and look to other sources to determine if the defendant's prior conviction falls within the conduct the ACCA penalizes. *See Taylor v. United States*, 495 U.S. 575, 602 (1990); *Shepard v. United States*, 544 U.S. 13, 19 (2005) (holding that *Taylor*'s reasoning extended to prior convictions stemming from guilty pleas as well as those stemming from jury verdicts). These other sources include charging documents, written plea agreements, transcripts of plea colloquies, and "any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16.

The state-court documents related to Jamison's 1994 felony-firearm conviction reflect that Jamison possessed a firearm while committing second-degree murder. Therefore, Jamison's juvenile felony-firearm conviction qualifies as an ACCA predicate offense only if second-degree murder is a violent felony under the ACCA.

**2.**

We use the categorical approach to determine if second-degree murder under Michigan law is a violent felony within the strictures of the ACCA's elements clause. *Fields*, 53 F.4th at 1043. Under that approach, we consider whether any of the acts criminalized by the state statute, "even the least culpable," do not match the elements clause. *Borden*, 141 S. Ct. at 1822. But focusing on the least culpable conduct under the state statute does not mean we should let our "legal imagination" run wild. *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). Instead, "there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" *Id.*

We look to Michigan law to determine if second-degree murder includes conduct that falls outside of the ACCA's elements clause. *Burris*, 912 F.3d at 398. In Michigan, a prosecutor

may initially charge a defendant with open murder.  *People v. Johnson*, 398 N.W.2d 219, 223 (Mich. 1986).  If a jury finds the defendant guilty, it determines whether the defendant committed first- or second-degree murder.  Mich. Comp. Laws Ann. § 750.318.  A person is guilty of first-degree murder if he commits any of the acts specified in Mich. Comp. Laws Ann. § 750.316.  "All other kinds of murder shall be murder of the second degree."  *Id.* § 750.317.

Drawing on common law, the Michigan Supreme Court defines murder as "the unlawful killing of one human being by another with malice aforethought."  *People v. Goecke*, 579 N.W.2d 868, 878 (Mich. 1998).  "The elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse."  *Id.*  Second-degree murder has as an element the use of force because, generally speaking, "a murderer must always 'use' physical force to cause death."  *United States v. Harrison*, 54 F.4th 884, 889 (6th Cir. 2022).  But does second-degree murder have the requisite *mens rea* necessary to be a violent felony?  We believe it does.

The key element is malice.  Malice includes: (1) "the intent to kill"; (2) "the intent to cause great bodily harm"; or (3) "the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm."  *Goecke*, 579 N.W.2d at 878.  The third type of malice reflects the least culpable second-degree murder.

Second-degree murder committed under the third type of malice is considered depraved-heart murder.  *Id.*  Depraved-heart murder "is a general intent crime" that does not require that the defendant "actually intend the harmful result."  *Id.* at 879.  "The intent to do an act in obvious disregard of life-endangering consequences is a malicious intent."  *Id.*  And "malice is implied when the circumstances attending the killing demonstrate an abandoned and malignant heart."  *Id.* at 880.

In *Borden*, the Supreme Court clarified that the ACCA's elements clause includes offenses committed by "purposeful and knowing acts," but not "reckless conduct."  141 S. Ct. at 1826.  As a result, if an offense requires "only a *mens rea* of recklessness—a less culpable mental state than purpose or knowledge"—that offense is not a violent felony.  *Id.* at 1821–22.

But *Borden* acknowledged that courts view mental states on a spectrum and left the door open for crimes with mental states between recklessness and knowledge—"often called depraved heart or extreme recklessness"—to qualify as violent felonies. *See id.* at 1825 n.4 (internal quotations omitted); *see also Harrison*, 54 F.4th at 890 (finding that *Borden* did not extend to "mental states more culpable than recklessness"); *Borden*, 141 S. Ct. at 1856 n.21 (Kavanaugh, J., dissenting) (opining that "crimes committed with extreme recklessness, such as depraved-heart murder, should obviously still qualify as predicate offenses under ACCA").

Michigan's depraved-heart murder falls pretty close to acting purposefully or knowingly on the *mens rea* spectrum. That is because unless circumstances justify it, "an act may be done with such heedless disregard of a harmful result, foreseen as a likely possibility, that it differs little in the scale of moral blameworthiness from an actual intent to cause such harm." *Goecke*, 579 N.W.2d at 879 (quoting Rollin M. Perkins & Ronald N. Boyce, Criminal Law 858 (3d ed. 1982)). "At times such a state of mind is said to be 'the same as if [the] defendant had deliberately intended the act committed.'" *Id.*

The Michigan Supreme Court has further described the *mens rea* for depraved-heart murder as akin to willful and wanton misconduct required in certain civil cases. Those civil cases describe willful conduct as acts that are "intentional, *or* its effective equivalent." *Id.* at 879 n.29 (quoting *Jennings v. Southwood*, 521 N.W.2d 230, 237 (Mich. 1994)). Put differently, willful and wanton conduct in those civil cases "is made out only if the conduct alleged shows an intent to harm *or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does.*" *Id.* Second-degree murder thus qualifies as a violent felony under the ACCA's elements clause.

Our recent decision in *Harrison* supports this conclusion. There, the defendant challenged a sentence enhancement he received under 18 U.S.C. § 3559(c) based on his prior Kentucky conviction for complicity to commit murder. *Harrison*, 54 F.4th at 886, 888. Under Kentucky law, "complicity to commit murder include[s] the elements of murder." *Id.* at 888 (citing Ky. Rev. Stat. Ann. § 507.020(1)). At the very least, that requires a defendant to "wantonly engage[] in conduct which creates a grave risk of death to another person and thereby cause[] the death of another person." Ky. Rev. Stat. Ann. § 507.020(1)(b); *Harrison*, 54 F.4th at

889–90.  We held that such wantonness was "a more culpable mental state than recklessness," and therefore complicity to commit murder qualified as a "serious violent felony" under 18 U.S.C. § 3559.  *Harrison*, 54 F.4th at 890.  Because § 3559's elements clause is nearly identical to that of the ACCA's language at issue here, "we can define a 'serious violent felony' under § 3559(c) the same way we define a 'violent felony' under the ACCA."  *United States v. Ruska*, 926 F.3d 309, 312 (6th Cir. 2019); *see also United States v. Patterson*, 853 F.3d 298, 305 (6th Cir. 2017) (similarly relying on the ACCA's elements clause to interpret the elements clause of the "crime of violence" provision in the Sentencing Guidelines).  Michigan second-degree murder, like Kentucky complicity to commit murder, "requires something a far cry from mere indifference to risk."  *Harrison*, 54 F.4th at 894 (Cole, J., concurring).

We are not alone in our conclusion.  As we noted in *Harrison*, other circuits have held that *Borden* does not preclude a finding that crimes with mental states more culpable than recklessness are violent felonies under the ACCA.  *Id.* at 890 (majority opinion) (citing *United States v. Begay*, 33 F.4th 1081, 1093–95 (9th Cir. 2022) (en banc), *Alvarado-Linares v. United States*, 44 F.4th 1334, 1344 (11th Cir. 2022), and *United States v. Manley*, 52 F.4th 143, 150–51 (4th Cir. 2022)).  And since *Harrison*, other circuits considering this issue continue to reach the same conclusion.  *See United States v. Kepler*, 74 F.4th 1292, 1302–09 (10th Cir. 2023) (finding federal depraved-heart murder is categorically a crime of violence under 18 U.S.C. § 924(c)—a statute with an elements clause almost identical to the ACCA); *Janis v. United States*, 73 F.4th 628, 632–35 (8th Cir. 2023) (finding that federal depraved-heart murder's "extreme recklessness" standard "is close to knowledge and far from ordinary recklessness," and "necessarily denotes the oppositional conduct" under § 924(c)).

In sum, Michigan second-degree murder is a "violent felony" under the ACCA because it: (1) requires a level of culpability almost indistinguishable from purposeful or knowing, and (2) necessarily involves the use of force.  And because second-degree murder is an element of Jamison's juvenile felony-firearm conviction, that conviction, which necessarily involves the possession of a firearm, qualifies as an ACCA predicate offense.  Therefore, Jamison had three qualifying offenses.

**3.**

Jamison argues that the district court's use of his juvenile conviction as a predicate offense falls outside the spirit of the ACCA. Put differently, he argues that his juvenile conviction should not be an ACCA predicate offense because of the time that has elapsed since that conviction and because he lacked maturity at the time of that offense. He cited almost no support for these arguments before the district court or on appeal.

Jamison's argument lacks merit. First, the district court correctly noted that there is no time limit for a defendant's prior convictions to serve as ACCA predicate offenses. *See United States v. Moreno*, 933 F.2d 362, 373 (6th Cir. 1991) ("Although the Sentencing Guidelines may restrict the sentencing court's consideration of certain past offenses, § 924(e) does not."). Second, and as we explained above, the ACCA's plain language explicitly allows for the inclusion of predicate juvenile offenses to enhance firearms possession penalties. *See* 18 U.S.C. § 924(e)(2)(B).

**III.**

Jamison also argues on appeal that the district court should have calculated his Guidelines range using U.S.S.G. § 2K2.1 with a base offense level of 24, not 26. But in sentencing Jamison, the district court relied on the ACCA guidelines, U.S.S.G. § 4B1.4, not U.S.S.G. § 2K2.1. Therefore, this argument is also meritless.

**IV.**

For the reasons above, we **AFFIRM** the judgment of the district court and **GRANT** the government's motion to take judicial notice of the charging petition for Jamison's juvenile case.