RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0292p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

　　　　　　　　　*Plaintiff-Appellee*,

　　*v.*

DAVON S. TOOLEY,

　　　　　　　　　*Defendant-Appellant*.

No. 24-5286

─────────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Lexington.
No. 5:23-cr-00127-1—Danny C. Reeves, District Judge.

Decided and Filed: October 23, 2025

Before: WHITE, STRANCH, and MURPHY, Circuit Judges.

─────────────────

**COUNSEL**

**ON BRIEF:** Pam Ledgewood, Lexington, Kentucky, for Appellant. Charles P. Wisdom Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

─────────────────

**OPINION**

─────────────────

HELENE N. WHITE, Circuit Judge. Defendant-Appellant Davon Tooley appeals his sentence for possession of a firearm as a convicted felon, arguing that the district court incorrectly counted his prior Kentucky conviction for second-degree manslaughter as a crime of violence under the Sentencing Guidelines. We agree, VACATE Tooley's sentence, and REMAND for resentencing.

## I. Background

In April 2022, Tooley's car struck a truck. Tooley asked the truck driver not to call the police because he had drugs and a firearm in his car, but the driver declined his request and called the police. Tooley fled on foot but was quickly apprehended. Officers found the gun and drugs in his car. The following year, officers who were conducting a traffic stop on Tooley's car observed a device used for smoking drugs. They searched the car and found ammunition, drugs, drug paraphernalia, and a gun with an extended magazine.

Tooley was charged with two counts of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and pleaded guilty. The presentence report ("PSR") calculated a base offense level of twenty-two for both counts. As relevant here, an offense level of twenty-two is appropriate for violations of 18 U.S.C. § 922(g)(1) "if (A) the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine . . . and (B) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." USSG § 2K2.1(a)(3). Here, Tooley's offense score of twenty-two was based on his prior Kentucky conviction of second-degree manslaughter, which the district court determined was a "crime of violence." Tooley did not object to this calculation at the time. He was sentenced to a total of 145 months in prison.

## II. Discussion

This appeal presents two questions. First, does the offense of second-degree manslaughter in Kentucky constitute a "crime of violence"? And, second, if not, does the district court's reliance on that conviction to enhance Tooley's sentence constitute plain error? We answer the first question in the negative and the second question in the affirmative.

### A. Standard of Review

The parties agree that, because Tooley did not object to the district court's calculation of his guidelines range, our review is for plain error. To establish plain error, a defendant must show that "(1) an error occurred in the district court; (2) the error was obvious or clear; (3) the

error affected defendant's substantial rights; and (4) this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Dubrule*, 822 F.3d 866, 882 (6th Cir. 2016) (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)). Tooley argues that it was plain error for the district court to calculate his base offense level at twenty-two.

**B. Analysis**

1.      Base Offense Calculation

A defendant convicted under 18 U.S.C. § 922(g)(1) is eligible for an enhanced base offense level if the defendant has a previous conviction for a "crime of violence." USSG § 2K2.1(a)(3). In determining the nature of a prior conviction, we "apply a 'categorical' approach, looking to the statutory definition of the offense and not the particular facts underlying the conviction." *United States v. Gibbs*, 626 F.3d 344, 352 (6th Cir. 2010) (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990)).

The term "crime of violence" is defined either by reference to a set of enumerated offenses, none of which is relevant here, or as an offense under state or federal law, "punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another . . . ." USSG § 4B1.2(a). In *Borden v. United States*, the Supreme Court analyzed the definition of "violent felony" in the Armed Career Criminal Act, 18 U.S.C. § 924(e), and determined that the phrase "use of physical force against the person of another" incorporated a *mens rea* requirement. 593 U.S. 420, 432–34 (2021) (plurality opinion). The Court held that the clause, and thus the definition of "violent felony," "covers purposeful and knowing acts, but excludes reckless conduct." *Id.*; *see id.* at 446 (Thomas, J., concurring in the judgment).

*Borden* further elaborated on the various levels of *mens rea*. Relying on case law and the Model Penal Code, the Court explained that a person "acts purposefully when he 'consciously desires' a particular result." *Id.* at 426 (quoting *United States v. Bailey*, 444 U.S. 394, 404 (1980)). Similarly, a person "acts knowingly when 'he is aware that [a] result is practically certain to follow from his conduct,' whatever his affirmative desire." *Id.* (quoting *Bailey*, 444

U.S. at 404) (citing Model Penal Code § 2.02(2)(b)(ii)).  By contrast, the *Borden* Court explained, recklessness and negligence involve less culpable mental states.  A person acts recklessly "in the most common formulation, when he 'consciously disregards a substantial and unjustifiable risk' attached to his conduct, in 'gross deviation' from accepted standards."  *Id.* at 427 (quoting Model Penal Code § 2.02(2)(c)).  And, "a person acts negligently if he is not but 'should be aware' of such a 'substantial and unjustifiable risk,' again in 'gross deviation' from the norm."  *Id.* (quoting Model Penal Code § 2.02(2)(d)).

Because we have long treated the terms "crime of violence" under the Sentencing Guidelines and "violent felony" under the Armed Career Criminal Act as having "essentially the same definitions," we follow *Borden*'s analysis here.  *United States v. Ford*, 560 F.3d 420, 421 (6th Cir. 2009); *Gibbs*, 626 F.3d at 352 n.6 (noting that "crime of violence" under the Guidelines and "violent felony" under the ACCA share "essentially the same definitions").  We must thus determine if Tooley's conviction of second-degree manslaughter in Kentucky required a *mens rea* of purposefulness or knowledge, or if it required merely recklessness.

When Tooley was convicted of second-degree manslaughter, Kentucky law stated: "[a] person is guilty of manslaughter in the second degree when he wantonly causes the death of another person . . . ."  Ky. Rev. Stat. § 507.040(1).  Kentucky law defines "wantonly" as follows:

> A person acts wantonly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists.  The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.  A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts wantonly with respect thereto.

Ky. Rev. Stat. § 501.020 (3).

*Borden* does not address the term "wantonly."  But *Borden*'s *mens rea* framework corresponds to the levels of culpability described by Kentucky law.  Indeed, both *Borden* and the Kentucky framework rely explicitly on the Model Penal Code.  *Compare Borden*, 593 U.S. at 426 (citing Model Penal Code § 2.02(2)), *with* Ky. Rev. Stat. § 501.020, 1974 Kentucky Crime Commission/LRC Commentary (explaining that the Kentucky *mens rea* statute "follow[s] the

lead of the Model Penal Code" and "fully and clearly defin[es]" four culpable mental states). The difference between the *Borden* framework and the Kentucky statute is simply the terms used. *Borden* and the Model Penal Code use the terms "recklessly" and "negligently" to describe what Kentucky law defines as "wantonly" and "recklessly," respectively. But the two frameworks are functionally identical.

As relevant here, the definition of "wantonly" in Kentucky law clearly maps onto the definition of "recklessly" used in the Model Penal Code and *Borden*. In Kentucky, a person acting wantonly "is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur." Ky. Rev. Stat. § 501.020(3). Similarly, in *Borden*, the Court explained that a person who acts recklessly "'consciously disregards a substantial and unjustifiable risk' attached to his conduct . . . ." *Borden*, 593 U.S. at 427 (quoting Model Penal Code § 2.02(2)(c)). Both definitions also require that the person's actions constitute a "gross deviation" from accepted standards. Ky. Rev. Stat. § 501.020(3); *Borden*, 593 U.S. at 427. Thus, although *Borden* did not use the term "wantonly," its definition of "recklessly" is functionally identical to the definition of "wantonly" under Kentucky law.

Similarly, the terms "recklessly" under Kentucky law and "negligently" under *Borden* and the Model Penal Code are equivalent. Under Kentucky law, a person acts "recklessly" if he "fails to perceive a substantial and unjustifiable risk" and the failure is "a gross deviation from the standard of care." Ky. Rev. Stat. § 501.020(4). In *Borden*, the same substantive language is used to describe the lowest *mens rea*, but *Borden* uses the term "negligently": "a person acts negligently if he is not but 'should be aware' of such a 'substantial and unjustifiable risk,' again in 'gross deviation' from the norm." *Borden*, 593 U.S. at 427 (quoting Model Penal Code § 2.02(2)(d)). Each framework contemplates the same levels of culpability; they simply use different terms.

This is true as well of Kentucky's murder statute. The Kentucky murder statute, Ky. Rev. Stat. § 507.020, covers wanton conduct that "demonstrates extreme indifference to human life." *Brown v. Commonwealth*, 975 S.W.2d 922, 924 (Ky. 1998). Under Kentucky law, extreme indifference to human life elevates the culpability of conduct that would otherwise be merely wanton such that it "cannot fairly be distinguished" from intentional homicide. *Id.* at 923

(quoting Ky. Rev. Stat. § 507.020, Commentary). The Kentucky murder statute relies on the framework from the Model Penal Code, as explained in the Commentary to the statute, but here too, replaces the term "recklessly" with "wantonly." *Compare* Ky. Rev. Stat. § 507.020, Commentary ("wantonness manifesting extreme indifference to human life"), *with* Model Penal Code § 210.2(1)(b) ("committed recklessly under circumstances manifesting extreme indifference to the value of human life"). Thus, Kentucky's murder, manslaughter, and *mens rea* statutes all rely on the Model Penal Code framework but use the term "wantonly" instead of "recklessly."

Because wantonness under Kentucky law is functionally identical to recklessness as defined in *Borden*, a crime requiring a *mens rea* of wantonness under Kentucky law is not a "crime of violence" under the Sentencing Guidelines. A defendant convicted of a crime requiring wantonness under Kentucky law "consciously disregard[ed] a substantial and unjustifiable risk that the result [would] occur." Ky. Rev. Stat. § 501.020(3). The Supreme Court has clearly held that such a defendant "has not used force 'against' another person in the targeted way that clause requires." *Borden*, 593 U.S. at 432. The district court therefore erred in classifying Tooley's conviction of Kentucky second-degree manslaughter as a "crime of violence," under USSG § 2K2.1(a)(3).

Resisting this conclusion, the government argues that wantonness under Kentucky law requires that a defendant act "knowingly," in contrast to the definition of "recklessly" in the *Borden* framework.[1] Apparently recognizing that the Kentucky definition of "wantonly" does not use the word "knowingly," the government's argument rests on the statute's use of the word "aware" in describing a defendant who is "aware of and consciously disregards a substantial and unjustifiable risk." Ky. Rev. Stat. § 501.020(3). This is in contrast to the Model Penal Code's and *Borden*'s use of the phrase "consciously disregards a substantial and unjustifiable risk," which does not include the word "aware." *See Borden*, 593 U.S. at 427 (quoting Model Penal Code § 2.02(2)(c)).

---

[1]We note that in another case, the government conceded that post-*Borden*, wanton second-degree assault under Kentucky law "does not qualify as a crime of violence under the elements clause." *United States v. Wright*, No. 22-5452, 2023 WL 4995748, at *3 (6th Cir. Aug. 4, 2023).

We are not persuaded that being aware of a risk is tantamount to acting knowingly. The requirement of awareness in the Kentucky statute applies to the clause that immediately follows, i.e., the "substantial and unjustifiable risk." That places the definition on all fours with recklessness in the *Borden* framework, which also covers a defendant who "consciously disregards a substantial and unjustifiable risk." *Id.* at 427 (quoting Model Penal Code § 2.02(2)(c)). Consciousness of the risk and awareness of the risk amount to the same thing: the defendant must appreciate the risk and choose to act anyway. In contrast, a defendant who acts knowingly must be "aware" that a *result* is "practically certain to follow from his conduct." *Id.* at 426 (quoting *Bailey*, 444 U.S., at 404). Simply being aware of the risk is insufficient. We therefore reject the government's attempt to distinguish "wantonly" under Kentucky law and "recklessly" under *Borden* based on the inclusion of the term "aware" in the Kentucky statute.

The government also points to our opinion in *United States v. Harrison*, 54 F.4th 884, 890 (6th Cir. 2022), for the proposition that a *mens rea* more culpable than recklessness can constitute a "crime of violence." *Harrison* did indeed so hold; but its holding is not relevant to the second-degree manslaughter offense at issue here. *Harrison* considered Kentucky's murder statute which, as we have explained, encompasses wantonness manifesting extreme indifference to human life. This elevation in the degree of wantonness makes the level of culpability equivalent to acting knowingly or intentionally in the eyes of the law. *Brown,* 975 S.W.2d at 924 (citing Ky. Rev. Stat. § 507.020, Commentary). Kentucky's manslaughter statute, at issue here, does not require this elevated level of wantonness. *Id.* at 923. As the concurrence in *Harrison* explained, for purposes of Kentucky law, "the line between wanton murder—functionally indistinguishable from knowledge or intent—and wanton manslaughter—more like mere recklessness—turns on the 'extreme indifference to human life' prong." *Harrison*, 54 F.4th at 894 (Cole, J., concurring). *Harrison* thus does not conflict with our conclusion that simple wantonness, without more, under Kentucky law is functionally equivalent to recklessness under *Borden* and cannot support a sentencing enhancement for a crime of violence.

In a similar vein, we held that wantonness in Michigan's second-degree murder statute is "close to acting purposefully or knowingly on the mens rea spectrum." *United States v. Jamison*, 85 F.4th 796, 803 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 613 (2024). Wantonness in that case

differed from "wantonly" in Kentucky's second-degree manslaughter statute and "recklessly" under *Borden* in that it required "such heedless disregard of a harmful result, foreseen as a likely possibility, that it differs little in the scale of moral blameworthiness from an actual intent to cause such harm." *Id.* (quoting *People v. Goecke*, 579 N.W.2d 868, 879 (Mich. 1998)). Thus, *Jamison*, like *Harrison*, involved a *mens rea* more culpable than Kentucky's general definition of wantonness. *Jamison* simply makes clear that, just as a *mens rea* more culpable than recklessness can constitute a "crime of violence," so too can a *mens rea* more culpable than simple wantonness. Neither case undermines our conclusion here that wantonness under the Kentucky manslaughter statute is insufficient for a crime of violence.

2.      Plain or Obvious Error

The government next argues that, even if we conclude that Tooley's manslaughter conviction is not a "crime of violence" under the Sentencing Guidelines, Tooley still cannot show the plain error required to reverse because "the law is not clear." Appellee's Br. at 6. The government argues that *Borden* "reserved the question of whether offenses that involve a mens rea between recklessness and knowledge satisfy the use of force clause." *Id.* at 6–7 (citing *Borden*, 593 U.S. at 429 n.4). We do not agree.

Plain error requires, at minimum, that "the error is clear under current law." *United States v. Lanham*, 617 F.3d 873, 884 (6th Cir. 2010) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). Here, our holding flows directly from binding Supreme Court precedent. A plain reading of the definition of "recklessness" in *Borden* and the definition of "wantonness" under Kentucky law reveals that the two are functionally identical. It was therefore clear error to treat "wantonness" under Kentucky law as a distinct and more culpable *mens rea*. To be sure, were we to conclude, as the government urges, that the wantonness required for a Kentucky manslaughter conviction falls between "recklessness" and "knowing," a different result might be appropriate. *Cf. United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015) ("A lack of binding case law that answers the question presented will also preclude our finding of plain error."). But because *Borden* makes clear that wantonness under Kentucky law is equivalent to recklessness under *Borden*, our conclusion squarely follows from binding precedent. As such, it was plain error for the district court to hold otherwise.

3.        Impact on the Defendant's Substantial Rights and Judicial Proceedings

The clear error inquiry requires two more findings: that the error impacts the defendant's substantial rights and the fairness of judicial proceedings.  Neither party addresses these points.  But we have little trouble concluding that the sentencing error here impacted Tooley's substantial rights by subjecting him to a lengthier sentence.  *See Molina-Martinez v. United States*, 578 U.S. 189, 192 (2016); *see also United States v. Wilson*, 614 F.3d 219, 223 (6th Cir. 2010) ("A sentencing error affects a defendant's substantial rights when there is a reasonable probability that, but for the error, she would have received a more favorable sentence.").  And by exposing Tooley to a harsher sentence through the misapplication of settled law, the error affected the fairness and integrity of the judicial proceedings.  *See Rosales-Mireles v. United States*, 585 U.S. 129, 132, 143 (2018); *United States v. Bostic*, 371 F.3d 865, 876–77 (6th Cir. 2004).  We therefore conclude that the error here meets the final two requirements for plain error.

*         *         *

For the reasons stated, we VACATE Tooley's sentence and REMAND for resentencing consistent with this opinion.